UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

DAVID GRENKE, individually, and
on behalf of all others similarly situated,

              Plaintiff,

v.

HEARST COMMUNICATIONS, INC., a
Delaware Corporation,

              Defendant.

Case No. 2:12-cv-14221

Hon. David M. Lawson

## DEFENDANT'S MOTION TO DISMISS THE COMPLAINT

Defendant Hearst Communications, Inc. ("Defendant "), by and through its counsel, moves to dismiss the class action complaint of plaintiff David Grenke ("Plaintiff") pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

1.      In this matter, Plaintiff has failed to establish statutory standing under Michigan's Video Rental Privacy Act, or Article III standing.

2.      Additionally, Plaintiff has failed to state a claim under the Video Rental Privacy Act.

3.      Plaintiff has also failed to state a claim for breach of contract or, in the alternative, unjust enrichment.

4.      On December 3, 2012, there was a conference between attorneys or unrepresented parties and other persons entitled to be heard on the motion in which the movant explained the nature of the motion or request and its legal basis and requested but did not obtain concurrence in the relief sought.

**WHEREFORE,** Defendant respectfully requests the Court grant its motion to dismiss the Complaint in its entirety with prejudice, together with costs, attorneys' fees, and such other relief as the Court deems appropriate.

Dated: December 3, 2012

| | |
|---|---|
| Herschel P. Fink  (P13427) | By:____s/ Sharon L. Schneier_____ |
| Robert M. Jackson (P40723) | Sharon L. Schneier |
| Arthur T. O'Reilly (P70406) | Collin J. Peng-Sue |
| HONIGMAN MILLER SCHWARTZ | DAVIS WRIGHT TREMAINE LLP |
| AND COHN, LLP | 1633 Broadway – 27th Floor |
| 660 Woodward Avenue | New York, New York 10019 |
| 2290 First National Building | Telephone:    (212) 489-8230 |
| Detroit, MI  48226 | Facsimile:    (212) 489-8340 |
| (313) 465-7400 | sharonschneier@dwt.com |
| hfink@honigman.com | collinpengsue@dwt.com |
| rjackson@honigman.com | |
| aoreilly@honigman.com | *Attorneys for Defendant Hearst Communications,* |
| | *Inc.* |

11752101.1

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

DAVID GRENKE, individually, and
on behalf of all others similarly situated,

               Plaintiff,

v.

HEARST COMMUNICATIONS, INC., a
Delaware Corporation,

               Defendant.

Case No. 2:12-cv-14221

Hon. David M. Lawson

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF
ITS MOTION TO DISMISS THE COMPLAINT**

Herschel P. Fink (P13427)
Robert M. Jackson (P40723)
Arthur T. O'Reilly (P70406)
Honigman Miller Schwartz and Cohn, LLP
660 Woodward Avenue
2290 First National Building
Detroit, MI  48226
(313) 465-7400
hfink@honigman.com
rjackson@honigman.com

Sharon L. Schneier
Collin J. Peng-Sue
Davis Wright Tremaine LLP
1633 Broadway – 27th Floor
New York, New York 10019
Telephone:    (212) 489-8230
Facsimile:    (212) 489-8340
sharonschneier@dwt.com
collinpengsue@dwt.com

*Attorneys for Defendant Hearst Communications,
Inc.*

# TABLE OF CONTENTS

**Page**

STATEMENT OF ISSUES PRESENTED.................................................................... ii

CONTROLLING OR MOST IMPORTANT AUTHORITY......................................... iii

PRELIMINARY STATEMENT ................................................................................ 1

FACTUAL BACKGROUND ................................................................................... 3

      A.    The Purpose and History of the Michigan Video Rental Privacy Act ................... 3

      B.    This Action.................................................................................................. 4

ARGUMENT ........................................................................................................ 5

I.    GRENKE LACKS BOTH STATUTORY AND ARTICLE III STANDING.................... 5

      A.    Grenke Lacks Statutory Standing .............................................................. 5

      B.    Grenke Lacks Article III Standing ............................................................. 9

II.    GRENKE FAILS TO STATE A CLAIM UNDER THE VIDEO RENTAL PRIVACY ACT ............................................................................................... 11

      A.    The Video Rental Privacy Act Does Not Apply Here ................................. 12

            1.    The Act Does Not Cover The Sale Of Magazines.................................. 12

            2.    The Legislative History Indicates The Act Does Not Cover Magazines.. 14

            3.    Construing The Act To Cover Magazines Would Raise Constitutional Issues That This Court Should Avoid...................................................... 15

      B.    Hearst Informed Grenke that His Information Could Be Disclosed For Marketing Purposes ................................................................................. 16

III.    GRENKE FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT ................. 18

      A.    Grenke Fails To Identify The Relevant Terms Of His Alleged Contract ............ 18

      B.    Grenke Has Failed To Allege Sufficient "Injury" ..................................... 19

IV.    GRENKE FAILS TO STATE A CLAIM FOR UNJUST ENRICHMENT.................... 20

CONCLUSION..................................................................................................... 20

## STATEMENT OF ISSUES PRESENTED

Should the claims under Michigan's Video Rental Privacy Act be dismissed under Rules 12(b)(1) and 12(b)(6) for lack of statutory and Article III standing because plaintiff has not suffered any injury or damage?

Defendant answers: Yes.

Should the claim under Michigan's Video Rental Privacy Act be dismissed under Rule 12(b)(6) for failure to state a claim because the statute does not apply to the disclosure of magazine subscription lists, and plaintiff was provided notice that her subscription information would be disclosed for marketing purposes?

Defendant answers: Yes.

Should the state common law claims be dismissed under Rule 12(b)(6) for failure to state a claim because they do not allege any contract that was breached or injury sustained?

Defendant answers: Yes.

## CONTROLLING OR MOST IMPORTANT AUTHORITY

*Warth v. Seldin*, 422 U.S. 490 (1975); *Vinton v. CG's Prep Kitchen and Café*, No. 1:09-cv-707, 2010 WL 748221 (W.D. Mich. March 2, 2010); *In re Doubleclick Inc. Privacy Litig.*, 154 F. Supp. 2d 497 (S.D.N.Y. 2001); *Boorstein v. Men's Journal LLC*, No. CV 12-771 DSF, 2012 WL 2152815 (C.D. Cal. June 14, 2012); *Boorstein v. Men's Journal LLC*, No. CV 12-771 DSF, 2012 WL 3791701 (C.D. Cal. Aug. 17, 2012); *King v. Conde Nast Publications*, No. CV 12-0719-GHK, 2012 WL 3186578 (C.D. Cal. Aug. 3, 2012); *Miller v. Hearst Communications, Inc*., No. CV 12–0733–GHK, 2012 WL 3205241 (C.D. Cal. Aug. 3, 2012); *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs*. (TOC), Inc., 528 U.S. 167 (2000); *Maloof v. BT Commercial Corp*., 261 Fed. Appx. 887 (6th Cir. 2008); *Sterk v. Best Buy Stores, L.P*., No. 11 C 1894, 2012 WL 5197901 (N.D. Ill. Oct. 17, 2012).

*McCormick v. Carrier*, 487 Mich. 180 (2010); *Sorrell v. IMS Health, Inc*., 131 S.Ct. 2653 (2011); *United States v. X-Citement Video, Inc*., 513 U.S. 64 (1994); *Kirch v. Embarq Mgmt. Co*., No. 10-2047-JAR, 2011 WL 3651359 (D. Kan. Aug. 19, 2011); Michigan Video Rental Privacy Act, M.C.L. §§ 445.1711-1715.

*LaMothe v. Auto Club Ins. Assoc*., 214 Mich. App. 577 (Mich. Ct. App. 1995); *Haisha v. Countrywide Bank*, FSB, No. 11-11276, 2011 WL 2271319 (E.D. Mich. June 8, 2011); *In re Doubleclick Inc. Privacy Litig*., 154 F. Supp. 2d 497 (S.D.N.Y. 2001)

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**FEDERAL CASES**

*American-Arab Anti-Discrimination Comm. v. City of Dearborn*,
   418 F.3d 600 (6th Cir. 2005) .................................................................................16

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...............................................................................................11

*Beaudry v. Telecheck Serv., Inc.*,
   579 F.3d 702 (6th Cir. 2009),
   *cert. denied* 130 S. Ct. 2379 (2010) ......................................................................10

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ......................................................................................8, 11, 12

*Boorstein v. Men's Journal LLC*,
   No. CV 12-771 DSF, 2012 WL 2152815 (C.D. Cal. June 14, 2012) ...................7, 8

*Boorstein v. Men's Journal LLC*,
   No. CV 12-771 DSF, 2012 WL 3791701 (C.D. Cal. Aug. 17, 2012).........................7

*Center for Bio-Ethical Reform., Inc. v. Napolitano*,
   648 F.3d 365 (6th Cir. 2011).....................................................................................8

*Cincinnati Ins. Co. v. Fed. Ins. Co.*,
   166 F. Supp. 2d 1172 (E.D. Mich. 2001)................................................................19

*Cohen v. Facebook, Inc.*,
   798 F. Supp. 2d 1090 (N.D. Cal. 2011).....................................................................9

*Crandon v. U.S.*,
   494 U.S. 152 (1990) ...............................................................................................12

*Deacon v. Pandora Media, Inc.*,
   No. C 11-04674 SBA, 2012 WL 4497796 (N.D. Cal. Sept. 28, 2012)......................9

*Doe v. Chao*,
   540 U.S. 614 (2004) .................................................................................................9

*Frank v. Dana Corp.*,
   646 F.3d 954 (6th Cir.),
   *cert. denied sub nom. Burns v. Plumbers & Pipefitters Nat. Pension Fund*,
   132 S. Ct. 559 (2011)..............................................................................................17

*Fremont Reorganizing Corp. v. Duke,*
    811 F. Supp. 2d 1323 (E.D. Mich. 2011) ..............................................................17

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,*
    528 U.S. 167 (2000) ...................................................................................................9

*Haisha v. Countrywide Bank, FSB,*
    No. 11-11276, 2011 WL 2271319 (E.D. Mich. June 8, 2011) ...............................18

*In re Brown,*
    342 F.3d 620 (6th Cir.2003) ....................................................................................18

*In re Carter,*
    553 F.3d 979 (6th Cir. 2009) ...................................................................................10

*In re Doubleclick Inc. Privacy Litig.,*
    154 F. Supp. 2d 497 (S.D.N.Y. 2001)..................................................6, 7, 19, 20

*In re Dunn,*
    203 B.R. 414 (E.D. Mich. 1996) ..............................................................................14

*In re Facebook Privacy Litig.,*
    No. C 10–02389 JW, 2011 WL 6176208 (N.D. Cal. Nov. 22, 2011)......................19

*In re JetBlue Airways Corp. Privacy Litig.,*
    379 F. Supp. 2d 299 (E.D.N.Y. 2005) ...............................................................7, 19

*In re Zynga Privacy Litig.,*
    No. C 10-04680 JWW, 2011 WL 7479170 (N.D. Cal. June 15, 2011) ...................19

*Jaimes v. Toledo Metro. Hous. Auth.,*
    758 F.2d 1086 (6th Cir. 1985).................................................................................10

*Jarbo v. BAC Home Loan Servicing,*
    No. 10-12632, 2010 WL 5173825 (E.D. Mich. Dec. 15, 2010) ..............................18

*King v. Conde Nast Publications,*
    No. CV 12-0719-GHK, 2012 WL 3186578 (C.D. Cal. Aug. 3, 2012)..................7, 8

*Kirch v. Embarq Mgmt. Co.,*
    No. 10-2047-JAR, 2011 WL 3651359 (D. Kan. Aug. 19, 2011)..............................18

*Klimas v. Comcast Cable Commc'ns, Inc.,*
    465 F.3d 271 (6th Cir. 2006) .............................................................................10, 11

*Leocal v. Ashcroft,*
    543 U.S. 1 (2004).......................................................................................................16

*Leslie Salt Co. v. United States*,
  55 F.3d 1388 (9th Cir. 1995) ................................................................16

*Limited, Inc. v. CIR*,
  286 F.3d 324 (6th Cir. 2002) ................................................................12

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)...............................................................................11

*Maloof v. BT Commercial Corp.*,
  261 Fed. Appx. 887 (6th Cir. 2008) .......................................................9

*Miller v. Hearst Communications, Inc.*,
  No. CV 12–0733–GHK, 2012 WL 3205241 (C.D. Cal. Aug. 3, 2012)....................8

*Mitchell v. Ky. Dept. of Corr.*,
  234 F.3d 1269, 2000 WL 1562842 (6th Cir. Oct. 12, 2000) ......................10

*Morell v. Star Taxi*,
  343 Fed. Appx. 54 (6th Cir. 2009).........................................................9

*Murray v. Time Inc.*,
  No. C 12-00431 JSW, 2012 WL 3634387 (N.D. Cal. Aug. 24, 2012) ....................7

*Nieman v. NLO, Inc.*,
  108 F.3d 1546 (6th Cir. 1997) ..............................................................11

*Parker v. U.S. Army*,
  No. 09-cv-11656, 2009 WL 3837654 (E.D. Mich. Nov. 16, 2009)........................18

*Potter v. Hughes*,
  546 F.3d 1051 (9th Cir. 2008) ................................................................5

*Raines v. Byrd*,
  521 U.S. 811 (1997)..........................................................................10, 11

*Sorrell v. IMS Health, Inc.*,
  131 S.Ct. 2653 (2011) ...................................................................2, 6, 15

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1988) ....................................................................5, 9, 10

*Sterk v. Best Buy Stores, L.P.*,
  No. 11 C 1894, 2012 WL 5197901 (N.D. Ill. Oct. 17, 2012) .................11

*United States v. X-Citement Video, Inc.*,
  513 U.S. 64 (1994).................................................................................16

*Univ. Sports Publ'ns Co. v. Playmakers Media Co.*,
    725 F. Supp. 2d 378 (S.D.N.Y. 2010)..................................................................16

*Valley Forge Christian College v.*
    *Americans United for Separation of Church & State, Inc.*,
    454 U.S. 464 (1982).........................................................................................10

*Van Alstyne v. Electronic Scriptorium, Ltd.*,
    560 F.3d 199 (4th Cir. 2009)..............................................................................9

*Vinton v. CG's Prep Kitchen and Café*,
    No. 1:09-cv-707, 2010 WL 748221 (W.D. Mich. March 2, 2010)..........................6

*Warth v. Seldin*,
    422 U.S. 490 (1975)..........................................................................................5


**STATE CASES**

*Allor v. DeClark, Inc.*,
    No. 300953, 2012 WL 555779 (Mich. App. Feb. 21, 2012) .................................20

*LaMothe v. Auto Club Ins. Assoc.*,
    214 Mich. App. 577 (Mich. Ct. App. 1996) ........................................................19

*McCormick v. Carrier*,
    487 Mich. 180 (2010) .......................................................................................12


**FEDERAL: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS**

18 U.S.C. § 2710.......................................................................................3, 14

47 U.S.C. § 551................................................................................................11

Fed. R. Civ. P. 8.............................................................................................11

Fed. R. Civ. P. 12(b)(1) ...........................................................................1, 5, 9

Fed. R. Civ. P. 12(b)(6) .........................................................................1, 5, 11

U.S. Const. amend. I ............................................................................2, 6, 15, 16

U.S. Const. art. III...................................................................................... passim

## STATE: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS

Cal. Civ. Code § 1798.83 .................................................................................7, 8

Cal. Civ. Code § 3344 ........................................................................................9

M.C.L. § 55.291 ................................................................................................13

M.C.L. § 256.659 ..............................................................................................13

M.C.L. § 338.3467 ............................................................................................13

M.C.L. § 429.352 ..............................................................................................13

M.C.L. § 442.352 ..............................................................................................14

M.C.L. § 442.353 ..............................................................................................14

M.C.L. § 445.911 ................................................................................................6

Michigan Video Rental Privacy Act, M.C.L. §§ 445.1711-1715 ........................ passim

## OTHER AUTHORITIES

Oscar H. Gandy, Jr., *The Panoptic Sort* (Westview Press 1993) ...................14

S.Rep. No. 100-599 (1988) .................................................................................3

Defendant Hearst Communications, Inc. ("Hearst") submits this memorandum of law in support of its motion to dismiss the class action complaint ("Complaint") of plaintiff David Grenke ("Grenke" or "Plaintiff") pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

## PRELIMINARY STATEMENT

This is one of many class actions the same lawyers have filed alleging violations of an obscure, and previously never invoked, statute – Michigan's Video Rental Privacy Act – which Michigan passed in 1988 in the wake of the federal Video Privacy Protection Act.[1]  Congress passed the federal statute after the Robert Bork nomination hearings (when the nominee's video store rental records were leaked to the press), intending it to protect against unauthorized rummaging through citizens' video rental records.  In his Complaint, Plaintiff details his personal dislike of certain generic data collection practices, but fails to plead facts showing that Hearst is legally liable for such routine and longstanding practices or their relevance to Michigan's statute.

Grenke alleges no personal concrete harm or damage to him at all, let alone harm or damage caused by the alleged disclosure of his subscription to *Country Living*, as the Michigan statute requires.  Rather, Grenke offers the speculative theory that Hearst deprived him of the chance to sell his own data to third-party advertisers and profit from the value of his personal information.  However, in analogous privacy class actions, numerous courts have rejected this injury theory, and dismissal of Plaintiff's claim under the Video Privacy Protection Act is warranted here as well.  Further, Plaintiff's failure to plead any injury demonstrates he lacks injury in fact sufficient to confer Article III standing.  *See* Point I.

---

[1] Consistent with their past practice, plaintiff's lawyers have brought nearly identical suits against other magazine publishers based on purported violations of Michigan's Video Rental Privacy Act. *See Halaburda v. Bauer*, No. 1:12-cv-14221 (assigned to Hon. George C. Steeh); *Fox v. Time*, No. 2:12-cv-14390 (which was recently reassigned to Hon. Gershwin A. Drain). The lawyers brought a fourth suit, *Fox v. Condé Nast*, No. 2:12-cv14312, on behalf of a plaintiff with the same name as the plaintiff in the *Time* action, Susan Fox, but voluntarily dismissed that action a few days before they filed the complaint in the *Time* action.

There are compelling reasons for the Court to find that the Video Rental Privacy Act does not apply, and was not intended to apply, to the disclosure of magazine subscriber lists. First, the plain meaning and legislative history of the Video Rental Privacy (consistent with the federal statute) make it clear that the Act does not apply to magazine subscriptions. To find that the term "written materials" was intended to broadly cover *any* disclosure of *any* written material would lead to absurd results and goes well beyond what was intended to be covered by the statute. Not surprisingly, Plaintiff has alleged no basis for treating magazines like videos (and books) or for treating subscribing to a magazine as "selling at retail" as required under the Act. *See* Point II.A.

Second, legitimate privacy concerns would not be served by applying the statute to prohibit sharing the fact that Grenke received through the mail a subscription to *Country Living* – one of *many* lifestyle and decorating magazines on the market. Magazines, like newspapers, contain a variety of articles and are disseminated through a variety of open channels of distribution and can hardly be considered the type of information that the Michigan legislature intended to criminalize and make subject to statutory sanctions. Particularly where, as here, the fact that Grenke's "personal" information could be shared with others was disclosed, he cannot claim that the disclosure of his magazine subscription is actionable under the Act. *See* Point II.B.

Third, the practices at issue do not come close to implicating Plaintiff's "most basic privacy rights" (Compl. ¶ 29). Indeed, in *Sorrell v. IMS Health, Inc.*, 131 S.Ct. 2653 (2011), the Supreme Court found a state law that restricted pharmacies, insurers and other entities from selling or disseminating prescriber-identifying information for marketing purposes violated the First Amendment. Interpreting the Michigan statute to penalize magazines for disseminating or sharing certain factual information for marketing purposes would similarly run afoul of First Amendment protections, and the rule of lenity which dictates a narrow construction of the statute. *See* Point II.A.3. It is hardly surprising that no one has brought a civil or criminal action under

2

the Video Rental Privacy Act based on the sale of magazine subscription lists in the 25 years since

Michigan enacted it into law, and no court has ever applied the Michigan statute applicable in

these circumstances.  In the meantime, magazine publishers' longstanding practices – including

subscription list sales – have remained largely unchanged since the statute's passage.

      Finally, Plaintiff's contract and unjust enrichment claims must also fail because he cannot

identify which provisions of his alleged contract was breached or any cognizable injury arising

from such breach.  *See* Points III and IV.

## FACTUAL BACKGROUND

### A.      The Purpose and History of the Michigan Video Rental Privacy Act

      In 1987, the video rental records of United States Supreme Court nominee Judge Robert

Bork were leaked to Washington's City Paper.  S.Rep. No. 100-599 at 5 (1988).  Congress

denounced the disclosure of Judge Bork's video rental records and moved quickly to pass

legislation prohibiting disclosure of video rental records.  *Id.*  The Video Privacy Protection Act

("VPPA"), which became law in November 1988, prohibits "any person, engaged in the

business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded

video cassette tapes or similar audio visual materials" from disclosing "to any person, personally

identifiable information concerning any consumer of such provider."  18 U.S.C. § 2710.  In

enacting the VPPA, Congress made clear that it was concerned with "only those transactions

involving the purchase of video tapes and not other products."  S.Rep. No. 100-599 at 12.

      Against this backdrop, the Michigan Legislature passed Act 378 of 1988, effective March

1989 (the "Video Rental Privacy Act," or "Act"), which states:

> a person, or an employee or agent of the person, engaged in the business of selling
> at retail, renting, or lending books or other written materials, sound recordings, or
> video recordings shall not disclose to any person, other than the customer, a
> record or information concerning the purchase, lease, rental, or borrowing of
> those materials by a customer that indicates the identity of the customer.

M.C.L. § 445.1712.  In considering the subsequent addition of Section 445.1715, which would establish civil remedies for violation of the Video Rental Privacy Act, the Michigan House expressed its understanding of the Act as "generally prohibit[ing] disclosures of information on a customer's rentals of books, videos, and sound recordings."  *See* House Legislative Analysis Section, May 4, 1989.  The Michigan Senate expressed a similar understanding, stating that the Act "prohibits disclosure of information on a customer's rental of books, videos, and sound recordings."  *See* Senate Fiscal Agency Bill Analysis, October 4, 1989.  Neither the Act itself nor its legislative history makes any reference to magazines.

The Video Rental Privacy Act also contains various exceptions, including one that permits disclosure "for the exclusive purpose of marketing goods and services directly to the consumer."  M.C.L. § 445.1713(d).  The statute further provides that "written notice that the customer may remove his or her name at any time" shall be provided to the person by the disclosing party.  *Id*.  The Video Rental Privacy Act provides a civil cause of action "for *damages* to the customer identified in the record … disclosed in violation of this act" and provides for the recovery of actual damages, including damages for emotional distress, or $5,000, whichever is greater.  M.C.L. § 445.1715 (emphasis added).  In addition, "[a] person who violates this act is guilty of a misdemeanor."  M.C.L. § 445.1714.

### B.     This Action

On September 24, 2012, Grenke filed the Complaint asserting that Hearst disclosed without prior notice his "names and address, as well as the fact that Grenke subscribes to *Country Living*."  Compl. ¶¶ 64-65.  Plaintiff alleges that disclosure of such information constitutes a violation of the Video Rental Privacy Act, which he alleges "prohibits companies from disclosing without permission *any* record or information identifying a customer as having purchased specific written materials."  *Id*. ¶ 5 (emphasis provided).  The Complaint details

4

Grenke's personal dislike of various marketing practices and unidentified "data miners." Compl. ¶¶ 21-22, 45. Plaintiff claims (based largely on press reports concerning information-sharing practices generally) that Hearst damaged him and the putative class by "dilut[ing] the value of Plaintiff and the other Class members' personal property, and depriv[ing] them of the opportunity to sell their personal property at market rates for their own financial gain." Am. Compl. ¶ 73. Among other remedies, Plaintiff seeks an injunction and an award of damages, "including disgorgement, or $5,000, whichever is greater, to each Class member." Compl. at 20-21 (Prayer for Relief), ¶ 4.

## ARGUMENT

### I.   GRENKE LACKS BOTH STATUTORY AND ARTICLE III STANDING

The Court should dismiss Grenke's claims under the Video Rental Privacy Act because he lacks standing under both the Act itself and Article III of the United States Constitution.

### A.   Grenke Lacks Statutory Standing

The Court should dismiss Grenke's First Cause of Action because he has failed to adequately plead "damages" or injury to confer standing under the terms of the Act.[2] The Video Rental Privacy Act premises a customer's right to bring a claim on "damages to the customer." M.C.L. § 445.1715. Thus, even assuming the Video Rental Privacy Act applies to magazine subscription information – which it does not – Grenke must plead he suffered "damages" to have statutory standing under the Act. "Essentially, the standing question in such cases is whether the … statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." *Warth v. Seldin*, 422 U.S. 490, 500 (1975). Here, the Video Rental Privacy Act does not allow a cause of action based on a mere statutory

---

[2] Lack of statutory standing requires dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6), not for lack of standing under Fed. R. Civ. P. 12(b)(1). *Potter v. Hughes*, 546 F.3d 1051, 1055-56 (9th Cir. 2008). Although Hearst also contends that Grenke lacks Article III standing, the Court may rule first on whether he has statutory standing under the Act without having to reach the Article III issue. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 97 n.2 (1988) (approving resolution of statutory standing before Article III standing); *id.* at 115-17 (Stevens, J., concurring).

violation.  Rather, § 445.1715 requires the plaintiff suffer resulting "damages" or injury.

Although no Michigan court has construed the Video Rental Privacy Act, including the "damages" provision, a recent opinion by the United States District Court for the Western District of Michigan offers some insight.  In *Vinton v. CG's Prep Kitchen and Café*, No. 1:09-cv-707, 2010 WL 748221, at *1 (W.D. Mich. March 2, 2010), plaintiff claimed a violation of the Michigan Consumer Protection Act ("MCPA") based on the defendant's issuance of a credit card receipt to him containing all sixteen digits of his credit card number.  The court noted that the MCPA granted standing to "[a] person who suffers loss as a result of a violation of this act," M.C.L. § 445.911(2), and plaintiff had "merely allege[d] a technical violation of the statute."  *Id.* at *2.  Accordingly, the court ruled that "[i]n the absence of allegations that plaintiff has 'suffered a loss,' no claim for damages is stated under the Consumer Protection Act."  *Id.*

Grenke fails to allege he suffered injury caused by the alleged disclosure of his subscription to *Country Living*.  Instead, the Complaint makes clear that Grenke's allegations are generic and do not identify any harm to Grenke.[3]  Here, the only "damages" Grenke alleges, besides the purported violation of the Video Rental Privacy Act, is that he and the purported class have lost "value" in the opportunity to sell their information themselves, and the value of their subscriptions has been diminished.  Compl. ¶¶ 70, 73.

First, Grenke does not plead how his subscription information has value to *him*.  Courts have rejected claims that personal information has value to individual consumers simply because it may have value to marketers.  For instance, in *In re Doubleclick Inc. Privacy Litig.*, 154 F.

---

[3] Grenke spends much time portraying the disclosure of consumer data as a nefarious practice undertaken with sinister motives.  But the United States Supreme Court has recently held that disclosure of consumer data is, in fact, speech protected by the First Amendment, the suppression of which is subject to heightened judicial scrutiny.  *See Sorrell*, 131 S.Ct. at 2663; *see also id.* at 2667 ("Facts, after all, are the beginning point for much of the speech that is most essential to advance human knowledge and to conduct human affairs.").

Supp. 2d 497, 525 (S.D.N.Y. 2001), the court held that "although demographic information is valued highly . . . the value of its collection has never been considered an economic loss to the subject." The court further noted it was "unaware of any court that has held the value of this collected information constitutes damage to consumers." *Id.* *See also In re JetBlue Airways Corp. Privacy Litig.*, 379 F. Supp. 2d 299, 327 (E.D.N.Y. 2005) ("[T]here is absolutely no support for the proposition that the personal information of an individual JetBlue passenger had any value for which that passenger could have expected to be compensated. It strains credulity to believe that . . . Torch would have gone to each individual JetBlue passenger and compensated him or her for access to his or her personal information.").

Moreover, even assuming Grenke's personal information did, in fact, have some "value" to him, nothing supports the idea that Hearst's alleged disclosure of that information deprived him of that value. In *Murray v. Time Inc.*, No. C 12-00431 JSW, 2012 WL 3634387 (N.D. Cal. Aug. 24, 2012), the plaintiff sued under California's "Shine the Light" Act, Cal. Civ. Code § 1798.83, alleging that "consumer data has 'inherent monetary value,' that 'consumers engage in *quid pro quo* transactions with online business whereby individuals exchange personal information for services,' and that 'companies now offer individuals the opportunity to sell their personal information themselves.'" 2012 WL 3634387, at *4. The court, however, ruled the plaintiff failed to "allege[] sufficient facts to show he suffered an economic injury" finding "Murray does not connect these general allegations to facts relating to the value of *his* personal information. Murray also has not alleged that . . . he would have attempted to sell his information and lost the opportunity to do so." *Id.* at *4-5 (emphasis original). *See also Boorstein v. Men's Journal LLC*, No. CV 12-771 DSF, 2012 WL 2152815 (C.D. Cal. June 14, 2012); *Boorstein v. Men's Journal LLC*, No. CV 12-771 DSF, 2012 WL 3791701 (C.D. Cal. Aug. 17, 2012); *King v. Conde Nast Publications*, No. CV 12-0719-GHK, 2012 WL 3186578

(C.D. Cal. Aug. 3, 2012); *Miller v. Hearst Communications, Inc.*, No. CV 12–0733–GHK, 2012

WL 3205241 (C.D. Cal. Aug. 3, 2012) (the "Cal. Privacy Cases"). [4]

   So, too, here. Grenke has failed to plead facts specific to *him* that show the sale of his

(and others') information damaged him. For example, he has not pled any facts that:

- He had an opportunity to sell that personal information;
- He desired to sell that personal information;
- Third parties would have purchased his personal information from him;
- Hearst's conduct prevented him from selling his personal information; or
- Hearst's conduct resulted in him receiving less money for his personal information.

*See generally* Compl. Instead, the Complaint refers to generalized harm with no ties to Grenke

himself or to the putative class. *See, e.g.*, Compl. ¶ 26 (alleging that "[i]nformation disclosures

like Hearst's are particularly dangerous to retirees" because of targeting by "fraudulent

telemarketers," but failing to allege that Grenke himself has been exposed to fraud). Further, to

the extent Grenke's claims of injury include the receipt of "a deluge of junk mail and telephone

solicitations," (Compl. ¶ 47), Grenke has failed to allege that this "deluge" was caused solely by

Hearst's purported disclosure. Indeed, such allegations are the kinds of "naked assertions" barred

by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). *See Center for Bio-Ethical*

*Reform., Inc. v. Napolitano*, 648 F.3d 365, 374 (6th Cir. 2011) (dismissing claim in part because

"Plaintiffs do not even explain how the alleged information sharing has resulted in any concrete

harm.").

   Accordingly, the allegation that Hearst has diluted the value of his information is

---

[4] The courts in the Cal. Privacy Cases rejected claims brought against magazine publishers based on the alleged misuse of subscription data under California's "Shine the Light" Act, Cal. Civ. Code § 1798.83. Those cases underscored that the practice of businesses sharing customers' personal information so third parties can directly market to customers is both common and legitimate. *See, e.g.*, *Boorstein,* 2012 WL 2152815, at *1; *Miller*, 2012 WL 3205241, at *4; *King*, 2012 WL 3186578, at *2. Indeed, Michigan's Video Rental Privacy Act specifically recognizes that businesses may share information for the "purpose of marketing goods and services directly to the consumer." M.C.L. § 445.1713(d).

insufficient to confer statutory standing under the Video Rental Privacy Act.[5]

## B.   Grenke Lacks Article III Standing

The Court should also dismiss Grenke's First Cause of Action because he lacks standing under Article III of the United States Constitution.[6]   Fed. R. Civ. P. 12(b)(1) requires dismissal where a plaintiff has not established standing to sue under Article III of the U.S. Constitution. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101-102 (1998).   To satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000).   Dismissal is appropriate if a plaintiff himself cannot establish standing.  *See Maloof v. BT Commercial Corp.*, 261 Fed. Appx. 887, 887 (6th Cir. 2008).

Article III standing presents an independent issue separate from whether a plaintiff has

---

[5] The court in *Deacon v. Pandora Media, Inc.*, No. C 11-04674 SBA, 2012 WL 4497796 (N.D. Cal. Sept. 28, 2012), mentioned in passing that the Video Rental Privacy Act "does not explicitly impose an actual injury requirement" and relied on an opinion from the Ninth Circuit interpreting the Fair and Accurate Credit Transactions Act in concluding the Michigan Act's "civil remedy provision allows for a recovery based on a showing of actual damages *or* statutory damages." 2012 WL 4497796, at *4 (emphasis original).  The *Deacon* court's interpretation of the Act does not bind this Court, and Hearst notes *Deacon*'s limited reference to statutory standing appeared in the context of an analysis of Article III standing, not statutory standing.  Moreover, that dicta conflicts with other cases regarding standing under other privacy statutes that provide for statutory damages.  *See, e.g., Doe v. Chao*, 540 U.S. 614, 620 (2004) ("nothing more than a statutory violation" inadequate for an award of statutory damages under the Privacy Act of 1974; such an award "goes only to victims who prove some actual damages"); *Van Alstyne v. Electronic Scriptorium, Ltd.*, 560 F.3d 199, 202 (4th Cir. 2009) ("plaintiffs pursuing claims under the [Stored Communications Act] must prove actual damages in order to be eligible for an award of statutory damages"); *Cohen v. Facebook, Inc.*, 798 F. Supp. 2d 1090, 1097 (N.D. Cal. 2011) (plaintiff must plead harm to qualify for statutory damages under Cal. Civ. Code § 3344).
[6] "When jurisdiction is premised on diversity of citizenship, a plaintiff must have standing under both Article III and state law in order to maintain a cause of action."  *Morell v. Star Taxi*, 343 Fed. Appx. 54, 57 (6th Cir. 2009).

standing under a particular statute (here, the Act). *See Steel Co.*, 523 U.S. at 97 (statutory standing "has nothing to do with whether there is case or controversy under Article III"). In a class action, at least one named plaintiff must have standing. *Jaimes v. Toledo Metro. Hous. Auth.*, 758 F.2d 1086, 1093 (6th Cir. 1985) ("That a suit may be a class action, however, adds nothing to the question of standing for even named plaintiffs who represent a class must allege and show that they personally have been injured") (citation and internal marks omitted)); *see also Mitchell v. Ky. Dept. of Corr.*, 234 F.3d 1269, 2000 WL 1562842, at *3 (6th Cir. Oct. 12, 2000).

The fact that a statute has authorized a plaintiff to sue by granting a right of action against the defendant therefore does not, without more, satisfy the requirement of injury in fact. *See Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997) ("Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing."); *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 487 n.24 (1982) ("Neither the Administrative Procedure Act, nor any other congressional enactment, can lower the threshold requirements of standing under Art. III.").[7] Thus, absent a concrete and particularized injury, Grenke has no Article III standing to

---

[7] The Sixth Circuit's decisions in *In re Carter*, 553 F.3d 979 (6th Cir. 2009), and *Beaudry v. Telecheck Serv., Inc.*, 579 F.3d 702 (6th Cir. 2009), *cert. denied* 130 S. Ct. 2379 (2010), are not to the contrary. In *Beaudry*, the Sixth Circuit held that the Fair Credit Reporting Act did not require proof of injury where the statute imposed a willfulness requirement and thus did not impose a strict liability regime. *Id.* at 708. Moreover, there, unlike here, plaintiff alleged harm – the inclusion of "*false* and *negative*" information about the plaintiff. *Id.* (emphasis in original). And in *Carter*, the plaintiffs alleged a specific harm, *i.e.*, that they had received "referrals sullied by kickbacks." 553 F.3d at 989. Indeed, the Sixth Circuit in *Carter* emphasized that "RESPA does not authorize suits by members of the public at large; it authorizes suit only by individuals who receive a loan that is accompanied by an unlawful referral, which is plainly an individualized injury." *Id.* at 989. Thus, *Carter* and *Beaudry* do not support the proposition that the Video Rental Privacy Act – a very different statutory scheme with a very different structure and purpose – creates Article III standing for any plaintiff who alleges a statutory violation that caused him no concrete and particularized injury. Here, Grenke pleads no financial detriment or other harm that has any nexus to alleged actions or omissions of Hearst. Further, to the extent *Klimas v. Comcast Cable Commc'ns, Inc.*, 465 F.3d 271 (6th Cir. 2006), held that an allegation

10

sue under the Michigan Act. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

As discussed above, Grenke fails to allege actual damages related to any disclosure. The only injury Grenke has alleged is a technical violation of the Act, and a technical statutory violation, without more, does not confer standing. *See Raines*, 521 U.S. at 820 n.3. Indeed, the District Court for the Northern District of Illinois recently dismissed a case under the federal VPPA for lack of Article III standing because the plaintiff failed to allege any injury besides a violation of the statute. *See Sterk v. Best Buy Stores, L.P.*, No. 11 C 1894, 2012 WL 5197901, at *6-7 (N.D. Ill. Oct. 17, 2012). Accordingly, the Court should dismiss his First Cause of Action.

## II. GRENKE FAILS TO STATE A CLAIM UNDER THE VIDEO RENTAL PRIVACY ACT

Under Fed. R. Civ. P. 8(a) "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting *Twombly*, 550 U.S. at 555). A complaint fails to meet this standard "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557). Rule 12(b)(6) exists to weed out undeserving complaints *before* parties engage in expensive discovery, particularly in putative class actions likely to generate significant discovery costs. *Twombly*, 550 U.S. at 559. "In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997). A court is

---

of a violation of the privacy provisions of the Cable Communications Policy Act, 47 U.S.C. § 551, conferred standing under Article III, that holding was dicta, as the court dismissed that case for failure to state a claim because broadband internet service did not qualify as "cable service" within the meaning of the statute. *Id.* at 280.

"not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.  When a plaintiff has "not nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Id.* at 570.

### A.     The Video Rental Privacy Act Does Not Apply Here

Based on the legislative history of the Video Rental Privacy Act, this Court should conclude that the Act does not and was not intended to apply in the circumstances alleged here. That being the case, the Court should dismiss Grenke's claim in its entirety.

### 1.     The Act Does Not Cover The Sale Of Magazines

"In determining the meaning of the statute, we look not only to the particular statutory language, but to the design of the statute as a whole and to its object and policy." *Crandon v. U.S.*, 494 U.S. 152, 158 (1990).  *See also McCormick v. Carrier*, 487 Mich. 180, 191 (2010) ("The primary goal of statutory construction is to give effect to the Legislature's intent").  "When the text of a statute contains an undefined term, that term receives its ordinary and natural meaning.  As a further aide in determining the meaning of an undefined term, the maxim of *noscitur a sociis* – it is known from its associates – directs us to look to accompanying words to deduce the undefined word's meaning.  Where this textual analysis fails to produce a conclusive result, or where it leads to ambiguous or unreasonable results, a court may look to legislative history to interpret a statute." *Limited, Inc. v. CIR*, 286 F.3d 324, 332 (6th Cir. 2002) (internal citations omitted).

Here, the Video Rental Privacy Act focuses on persons "engaged in the business of selling at retail," not on magazine publishers, who are not in the "retail" business as that word is commonly understood.  Consistent with this understanding, no civil or criminal case has been brought against magazine publishers for selling subscriber lists in the last 25 years, even though the sale of those lists has been a well-known practice since long before the Act's passage.

Even if this Court were to view publishers as "retailers" under the Act, it does not cover

magazines.  The Act refers to "information concerning the purchase, lease, rental, or borrowing" of "books or other written materials," but does not define "written materials."  *See* M.C.L. §§ 445.1711, 445.1712.  No reported cases interpret "written materials" in the context of the Video Rental Privacy Act, and the ordinary definitions of "written" and "materials" are unhelpfully vague and ambiguous.  *See* http://www.merriam-webster.com/dictionary/written (defining "write" as "to form (as characters or symbols) on a surface with an instrument (as a pen);" "to form (as words) by inscribing the characters or symbols of on a surface;" "to spell in writing;" and "to cover, fill, or fill in by writing"); http://www.merriam-webster.com/dictionary/material (defining "material" as "relating to, derived from, or consisting of matter").[8]  It is self-evident that disclosure of someone's subscription to a magazine or newspaper – containing a variety of articles – is entirely different from disclosure that someone rented or purchased a particular video (or book) and is not the activity covered by the Act.

Moreover, no Michigan statute, including the Act, includes magazines in its definition of "written materials."  Indeed, a review of the Michigan Compiled Laws reveals a plethora of ideas as to what constitutes "written material" – none of which includes magazines.  *See* Michigan Notary Public Act, M.C.L. § 55.291(2)(b) (prohibiting notaries from translating from English certain terms found on any "document, advertisement, stationery, letterhead, business card, or other comparable written material"); Driver Education Provider and Instructor Act, M.C.L. § 256.659(c)(ii) (requiring driving instructors to provide instructional information in the form of "a brochure or other written material" if received at no cost); Michigan Immigration Clerical Assistant Act, M.C.L. § 338.3467(q)(2) (prohibiting immigration clerical assistants from translating from English certain terms found on any "document, advertisement, stationery, letterhead, business card, or other comparable written material"); Appliances Act, M.C.L. § 429.352(b) (prohibiting the sale of appliances bearing "a label or other written materials"

---

[8] Under these definitions, any objects bearing any symbols would constitute "written materials."

containing false or misleading information regarding the appliance's energy efficiency); Art
Multiples Sales Act, M.C.L. § 442.352(1) (permitting certain information to be furnished in "a
catalog or other written material"); *id.* § 442.353 (requiring certain disclosures for solicitation of
direct sales in "a catalog, prospectus, flyer, or other written material or advertisement").

### 2.    The Legislative History Indicates The Act Does Not Cover Magazines

The legislative history of the Video Rental Privacy Act leaves no doubt that the term
"written materials" was intended to be construed narrowly. *See, e.g.*, *In re Dunn*, 203 B.R. 414,
416 (E.D. Mich. 1996) ("To determine the meaning Congress intended its enactment to carry,
courts are to look to the legislative history."). In fact, that history (as well as the history of the
related federal statute) shows the Michigan Legislature *never* intended to criminalize the existing
practice of sharing magazine subscription information.

The federal statute, which immediately preceded the Act, clearly excluded magazine
subscription information. *See* 18 U.S.C. § 2710(a)(4) (limiting scope of act to "rental, sale or
delivery of prerecorded video cassette tapes or similar audio visual materials"). Indeed, it was
commonly recognized the federal statute did *not* cover magazine subscription lists. The editors
of *Friday Report*, a marketing newsletter, complained about the federal statute and raised the
question, "if this legislation passes, will magazine subscription lists be next?" Oscar H. Gandy,
Jr., *The Panoptic Sort*, 210-11 (Westview Press 1993) (citing "DMA Comes Out Against Video
Privacy Legislation As Written," *Friday Report*, Aug. 5, 1988, at 1).

With the federal statute in mind, the Michigan legislature passed the Video Rental
Privacy Act. The Michigan legislature, like Congress, did not intend the Act to apply to
magazine subscriptions. Both the Michigan House and the Michigan Senate understood the Act
to apply to "rentals of books, videos, and sound recordings," not magazines. *See* House
Legislative Analysis Section, May 4, 1989; Senate Fiscal Agency Bill Analysis, October 4, 1989.

And the popular name of the Act, the "Video Rental Privacy Act," by referring to "Rental[s]," excludes subscriptions, including magazine subscriptions. Similarly, the editorially supplied caption for the Act reads, "Purchase, rental, or borrowing of *books, or sound or video recordings*; preservation of personal privacy" (emphasis added). All of the available evidence dispels any notion that Michigan legislature was intending to criminalize the then-routine practice of selling magazine subscription lists for marketing purposes.

### 3. Construing The Act To Cover Magazines Would Raise Constitutional Issues That This Court Should Avoid

If the Court were to find the Michigan statute applies to the sharing of facts concerning magazine subscriptions, that reading would raise difficult First Amendment issues. In *Sorrell*, the Supreme Court rejected the government's interest in protecting doctors from the harassing sales behavior of pharmaceutical companies by restricting the sales of pharmacy records that reveal an individual doctor's prescribing practices unless the doctor opts-in and permits disclosure. That case involved a Vermont statute that forbade the sale of doctors' prescription-buying preferences to pharmaceutical manufacturers for marketing purposes, while allowing sale of the same information to other users. 131 S.Ct. at 2663. The Supreme Court held the statute impermissibly imposed both content-based and speaker-based restrictions on the availability and use of prescriber-identifying information. The information was most likely speech entitled to protection because "[f]acts, after all, are the beginning point for much of the speech that is most essential to advance human knowledge and to conduct human affairs." *Id.* at 2667. Not unlike magazine subscription lists, the Supreme Court found little doubt that databases of doctors' prescription-buying preferences were speech entitled to protection because the value of the databases communicated doctors' preferences.

The rule of lenity further requires the Court to narrowly construe any ambiguity in the Video Rental Privacy Act's civil action provision and resolve it in favor of Hearst. The rule of

lenity, a canon of statutory construction, counsels courts to choose the interpretation of an ambiguous statute that is most "lenient" or favorable to the defendant. *See, e.g.*, *Leocal v. Ashcroft*, 543 U.S. 1, 11 n.8 (2004) (holding where a statute has both civil and criminal application the rule of lenity must be applied consistently to both). Courts have applied the rule of lenity in analogous situations, where the claim was based on criminal statutes that created a civil action (*see, e.g., Leslie Salt Co. v. United States*, 55 F.3d 1388, 1398 (9th Cir. 1995)*; Univ. Sports Publ'ns Co. v. Playmakers Media Co.*, 725 F. Supp. 2d 378, 384 (S.D.N.Y. 2010), and the rule is applied with particular scrutiny in cases implicating First Amendment concerns. *See United States v. X-Citement Video, Inc.*, 513 U.S. 64 (1994); *American-Arab Anti-Discrimination Comm. v. City of Dearborn*, 418 F.3d 600, 611-13 (6th Cir. 2005).

* * * * *

In sum, nothing in the Act supports the broad interpretation of "written materials" that Plaintiff urges in his Complaint. It defies the logical reach of the statute as evidenced by its legislative history – "rentals of books, videos and sound recordings" – and, if adopted, would raise constitutional concerns. Because the Video Rental Privacy Act does not, and should not, cover magazines, and thus does not apply to Hearst's purported disclosure of the fact that Grenke subscribes to *Country Living*, the Court should dismiss Grenke's First Cause of Action.

## B.   Hearst Informed Grenke that His Information Could Be Disclosed For Marketing Purposes

The Court should also dismiss Grenke's claims for violation of the Video Rental Privacy Act because the Act specifically allows disclosure for the "purpose of marketing goods and services directly to the consumer" as long as the person disclosing the information "inform[s] the customer by written notice that the customer may remove his or her name at any time by written notice to the person disclosing the information." M.C.L. § 445.1713(d).

Grenke makes the sweeping conclusory allegation that "[r]egardless of how the consumer subscribes … Hearst uniformly fails to obtain any form of consent from—or even provide effective notice to—its subscribers before disclosing their Personal Reading Information." Compl. ¶ 37.  But the *Country Living* magazine, as well as its website (the "Website") (http://www.countryliving.com/), where customers can subscribe to the magazine, reveals that Grenke's allegations are baseless.[9]  In fact, *Country Living* magazine explicitly states:

> . . . we make our subscriber list available to companies who sell goods by mail that we believe would interest our readers.  If you would rather not receive such mailings, please send your current mailing label or exact copy to [address].

December 3, 2012 Declaration of Sharon L. Schneier Exs. A, B.  Moreover, the Website's Privacy Policy states:

> "Personally Identifiable Information" ["PII"] . . . includes your name, email address, address, telephone number and any other information that we associate with any of the foregoing. By submitting [PII] through any of our Covered Sites, you agree to the terms of this privacy policy and you expressly consent to the collection, use and disclosure of your [PII] in accordance with this privacy policy.

*See* http://www.countryliving.com/privacy-policy.   It further states that Hearst "may disclose your contact information to third parties to allow them to market their products or services to you or for other marketing purposes" and provides details on how to "opt out of having your information shared with marketing services companies."  *Id.*

Here, it is clear from both the Website and *Country Living* itself that Hearst provided written and explicit notice to Grenke that his information would be disclosed for marketing purposes, and that he could opt out.  This is exactly the activity permitted by the Video Rental

---

[9] On a motion to dismiss, a court may consider documents incorporated into a complaint by reference.  *See Frank v. Dana Corp.*, 646 F.3d 954, 959 (6th Cir.), *cert. denied sub nom. Burns v. Plumbers & Pipefitters Nat. Pension Fund*, 132 S. Ct. 559 (2011); *see also Fremont Reorganizing Corp. v. Duke*, 811 F. Supp. 2d 1323, 1334 (E.D. Mich. 2011) (Lawson, J.) (documents not attached to the pleadings may be considered on a motion to dismiss "if those documents govern the plaintiff's rights and are necessarily incorporated by reference").

Privacy Act. *See* M.C.L. § 445.1713(d). Thus, his First Cause of Action should be dismissed. [10]

## III.   GRENKE FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT

To state a claim for breach of contract under Michigan law, a plaintiff must allege (1) the existence of a valid contract; (2) the terms of the contract; (3) breach of the contract; and (4) an injury caused by the breach. *See Haisha v. Countrywide Bank, FSB*, No. 11-11276, 2011 WL 2271319, at *4 (E.D. Mich. June 8, 2011) (citing *In re Brown*, 342 F.3d 620, 628 (6th Cir.2003)).

### A.   Grenke Fails To Identify The Relevant Terms Of His Alleged Contract

Grenke fails to even plead the contract provisions Hearst allegedly breached. In *Parker v. U.S. Army*, this court dismissed a breach of contract claim where, as here, the plaintiff did not identify any contract that was breached. No. 09-cv-11656, 2009 WL 3837654 (E.D. Mich. Nov. 16, 2009). Similarly, in *Haisha* the court dismissed plaintiff's breach of contract claim: "Plaintiffs' allegation of a breach is lacking because it is unaccompanied by facts that support the claim, and is therefore implausible . . . nowhere do Plaintiffs plead which provisions of the mortgage or note are violated." 2011 WL 2271319, at *4. Likewise, in *Jarbo v. BAC Home Loan Servicing*, No. 10-12632, 2010 WL 5173825, at *10 (E.D. Mich. Dec. 15, 2010), the Court granted Defendants' motion to dismiss because "Plaintiffs provide[d] no specific contract provision or identifiable term breached by any specific Defendant . . . Plaintiffs identify no contractual provision precluding assignment or incorporating 'SEC guidelines' that might preclude assignment." Grenke has failed to identify which provisions of his purported contract Hearst supposedly breached when it allegedly violated the Video Rental Privacy Act.

---

[10] Moreover, courts have held that website users consent to the terms of use contained in the website's privacy policies. *See, e.g.*, *Kirch v. Embarq Mgmt. Co.*, No. 10-2047-JAR, 2011 WL 3651359, at *8 (D. Kan. Aug. 19, 2011) (holding plaintiffs consented to monitoring of their internet use because "the prevailing industry practice among websites is to disclose their relationship with advertising networks and the type of information those networks collect, in their privacy policies."). Thus, anyone who subscribed to *Country Living* agreed that Hearst, like many other publishers, could provide subscriber information for third party marketing.

Accordingly, the Court should dismiss his breach of contract claim.[11]

### B.    Grenke Has Failed To Allege Sufficient "Injury"

Courts also dismiss breach of contract claims for failure to allege sufficient "injury."  In
*LaMothe v. Auto Club Ins. Assoc.*, 214 Mich. App. 577, 582 (Mich. Ct. App. 1995), for example,
the plaintiff pled that his "injury" was "the threat of receiving annoying or harassing telephone
calls."  The court held those were "not cognizable damages in a contract action" and plaintiff had
"suffered no damages as a matter of law."  *Id.* at 582, 583.  Similarly, Grenke's allegations of
injury include the receipt of "a deluge of junk mail and telephone solicitations," (Compl. ¶ 47)
which do not suffice to state a claim for breach of contract.

District courts have also rejected breach of contract claims for failure to alleged "injury"
based on the alleged sale of personal data, finding personal information to have no value to
consumers.  *See, e.g.*, *In re Facebook Privacy Litig.*, No. C 10–02389 JW, 2011 WL 6176208, at
*5 (N.D. Cal. Nov. 22, 2011) ("Plaintiffs fail to show that they have suffered 'appreciable and
actual damage,' which means that their breach of contract claim fails"); *In re Zynga Privacy Litig.*,
No. C 10-04680 JWW, 2011 WL 7479170, at *2 (N.D. Cal. June 15, 2011) (same); *JetBlue*, 379 F.
Supp. 2d at 327 (plaintiffs "had no reason to expect that they would be compensated for the 'value'
of their personal information"); *DoubleClick*, 154 F. Supp. 2d at 525 ("[A]lthough demographic
information is valued highly . . . the value of its collection has never been considered a[n]
economic loss to the subject")  Here, Grenke's assertion of injury resembles the theory the
*LaMothe*, *Facebook*, *Zynga*, *JetBlue*, and *DoubleClick* plaintiffs unsuccessfully advanced to show

---

[11] As discussed in Part II.B above, the *Country Living* Website privacy policy establishes that
consumers obtaining subscriptions through the website consent to disclosure of their information.
Accordingly, to the extent Grenke claims ambiguity about whether his subscription impliedly
required Hearst to abide by the Video Rental Privacy Act's disclosure provisions, that attempt
must fail.  *See Cincinnati Ins. Co. v. Fed. Ins. Co.*, 166 F. Supp. 2d 1172, 1177 (E.D. Mich.
2001) ("If a contract is clear and unambiguous, the court must enforce the contract as written").

"damage."  This Court should likewise dismiss his breach of contract claim.

## IV.    GRENKE FAILS TO STATE A CLAIM FOR UNJUST ENRICHMENT

Finally, Grenke fails to state an alternative claim for unjust enrichment.  Hearst can hardly be deemed to have enriched itself unjustly given that Grenke was notified by Hearst that it would disclose his information to third party marketers.  *See* Point II.B *supra*.  Moreover, the "correct measure of damages in an unjust enrichment claim is the value of the benefit received by the defendant." *Allor v. DeClark, Inc.*, No. 300953, 2012 WL 555779, at *2 (Mich. App. Feb. 21, 2012).  The Complaint fails to allege any benefit that Hearst received here.  For example, there are no allegations in the Complaint that Hearst would have charged Grenke less for his subscription to *Country Living* had it not disclosed his information.  *See also Doubleclick*, 154 F. Supp. 2d at 525 ("we are unaware of any court that has held the value of this collected information constitutes damage to consumers or unjust enrichment to collectors").  Grenke's Third Cause of Action must therefore fail.

## CONCLUSION

For the reasons set forth above, defendant Hearst respectfully requests the Court grant its motion to dismiss the Complaint in its entirety with prejudice, together with costs, attorneys' fees, and such other relief as the Court deems appropriate.

Dated: December 3, 2012

| | |
|---|---|
| Herschel P. Fink  (P13427) | By:___/s/ Sharon L. Schneier_____ |
| Robert M. Jackson (P40723) | Sharon L. Schneier |
| Arthur T. O'Reilly (P70406) | Collin J. Peng-Sue |
| Honigman Miller Schwartz And Cohn, LLP | Davis Wright Tremaine LLP |
| 660 Woodward Avenue, Suite 2290 | 1633 Broadway – 27th Floor |
| Detroit, MI  48226 | New York, New York 10019 |
| (313) 465-7400 | Telephone:     (212) 489-8230 |
| hfink@honigman.com | Facsimile:     (212) 489-8340 |
| rjackson@honigman.com | sharonschneier@dwt.com |
| aoreilly@honigman.com | collinpengsue@dwt.com |

*Attorneys for Hearst Communications, Inc.*

11754339.1

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned certifies that a copy of the foregoing was served on the attorneys of record in this matter by efiling on December 3, 2012.

The statement above is true to the best of my knowledge, information and belief.

/s/ Sharon L. Schneier
Sharon L. Schneier