UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CINDY HALABURDA, individually, and
on behalf of all others similarly situated,

        Plaintiff,

v.                                                                    Case No.  12-CV-12831
                                                                      HON.  GEORGE CARAM STEEH
BAUER PUBLISHING CO., LP, a
Delaware partnership,

        Defendant.
_____/

DAVID GRENKE, individually, and
on behalf of all others similarly situated,

        Plaintiff,

v.                                                                    Case No.  12-CV-14221

HEARST COMMUNICATIONS, INC., a
Delaware Corporation,

        Defendant.
_____/

SUSAN FOX, individually, and
on behalf of all others similarly situated,

        Plaintiff,

v.                                                                    Case No.  12-CV-14390

TIME, INC., a Delaware Corporation,

        Defendant.
_____/

<u>OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTIONS TO DISMISS (DOC. #29 IN HALABURDA CASE;
DOC. # 18 IN GRENKE CASE; DOC. # 22 IN FOX CASE) AND SCHEDULING
ORAL ARGUMENT ON THE PENDING MOTIONS TO CERTIFY CLASS
(DOC. # 2 IN GRENKE CASE; DOC. # 2 IN FOX CASE)</u>

INTRODUCTION

Plaintiffs bring these putative class action suits alleging violations of Michigan's Video Rental Privacy Act ("VRPA"), M.C.L. § 445.1712, and common law breach of contract and, in two of the three cases, unjust enrichment, for the defendant magazine publishers' (collectively "the publishers") alleged disclosures of subscribers' personal information.[1]

Each of the named plaintiffs in these actions is or was a subscriber to a magazine or magazines published by the respective defendants to these actions. Plaintiffs allege that the defendants sell lists of their customers' names, home addresses, and magazine subscription choices (called "personal reading information" by plaintiffs) to companies that collect and sell that information to other entities. Plaintiffs further allege that they are never informed about this practice.

Before the court are the publishers' motions to dismiss, in which they argue that the plaintiffs have failed to establish either statutory standing under the VRPA or Article III standing. Additionally, defendants claim that plaintiffs fail to state a claim either under the VRPA or for breach of contract/unjust enrichment. The court has heard oral argument on the motions. For the reasons that follow, the court grants in part and denies in part defendants' motions to dismiss as to all three complaints.

---

[1]Two of the three cases captioned above, Grenke v. Hearst Communications, Inc., case no. 12-14221 (Hon. David M. Lawson); and Fox v. Time, Inc., case no. 12-14390 (Hon. Gershwin A. Drain), were reassigned to the docket of this court in January 2013. This court had a lower case number in which the plaintiff sought similar if not identical relief: Halaburda v. Bauer Publishing Co., case no. 12-12831. The reassignment was effected for the limited purpose of coordinated or consolidated pretrial proceedings, for reasons of judicial efficiency, as contemplated by E.D. Mich. L.R. 83.11(b)(3).

LEGAL STANDARD

When a district court is faced with a motion to dismiss brought on multiple grounds, it is "bound to consider the 12(b)(1) motion first, since the [alternative] challenge becomes moot if the court lacks subject matter jurisdiction." Moir v. Greater Cleveland Reg'l Transit Auth., 895 F.2d 266, 269 (6th Cir. 1990). Rule 12(b)(1) allows a party to challenge the court's subject matter jurisdiction. In deciding a motion to dismiss under Rule 12(b)(1), the court must "dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." Sweeton v. Brown, 27 F.3d 1162, 1169 (6th Cir. 1994) (quoting United States v. Siviglia, 686 F.2d 832, 835 (10th Cir. 1981)). Rule 12(b)(1) motions can attack *either* the claim of jurisdiction "on its face," or the factual basis for jurisdiction. DLX, Inc. v. Kentucky, 381 F.3d 511, 516 (6th Cir. 2004).

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must construe the complaint in favor of the plaintiff, accept the factual allegations as true, and determine whether the allegations present plausible claims. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1964-65 (2007).  The pleading must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id. at 1964-65.  Although the complaint need not contain detailed factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level[.]"  Ass'n of Cleveland Fire Fighters v. City of Cleveland, 502 F.3d 545, 548 (6th Cir. 2007) (citing Twombly, 127 S. Ct. at 1965).  The court should first identify any conclusory allegations and bare assertions that are not entitled to an assumption of truth, then consider the factual allegations that

are entitled to a presumption of truth and determine if they plausibly suggest entitlement to relief. Ashcroft v. Iqbal, 556 U.S. 662; 129 S.Ct. 1937, 1951 (2009).

## ANALYSIS

I.   Allegations in the Complaint

Count I in each of the three complaints is brought pursuant to Michigan's VRPA, M.C.L. § 445.1712.  Plaintiff seeks to recover: (1) injunctive relief;[2] (2) the greater sum of actual damages or $5,000.00; and (3) costs and reasonable attorney fees. As stated above, plaintiffs' claims stem from the defendants' alleged disclosures of subscribers' "personal reading information."  Plaintiffs allege that the defendants disclose information about subscribers to "data miners,"[3] and "anybody willing to pay for it," including magazine choices, addresses, and additional information about subscribers' incomes, households, etc., to third parties without the subscribers' consent. Plaintiffs state that there are numerous ways to subscribe to the magazines and state that regardless of the way that a person subscribes, the publishers never provide subscribers with any terms of service, privacy policies, or information-sharing policies.  Plaintiffs contend that this practice violates subscribers' statutorily protected right to privacy in their reading choices and personal information under the VRPA.[4]

---

[2]The VRPA does not provide for injunctive relief.

[3]Plaintiffs describe "data miners" as being entities who create and/or maintain databases containing sensitive information about consumers, and supplement the information provided by defendants with such information.  Thus, an "enhanced" mailing list is created for marketing by defendants or other entities.

[4]In the Grenke and Fox cases, plaintiffs also allege that plaintiffs now receive junk mail and telephone solicitations which have caused plaintiffs a waste of time, money, and resources, and also emotional distress. See Doc # 35, pgs. 30-31.

-4-

II. Motions to Dismiss

The VRPA is a state statute that lacks any significant litigation history. Its enactment in 1988 followed the federal Video Privacy Protection Act, 18 U.S.C. § 2710, which came into being after the Robert Bork nomination hearings, during which the nominee's video rentals were disclosed to the press in Washington, D.C. Michigan's VRPA provides that

> a person, or an employee or agent of the person, engaged in the business of selling at retail, renting, or lending books or other written materials, sound recordings, or video recordings shall not disclose to any person, other than the customer, a record or information concerning the purchase, lease, rental, or borrowing of those materials by a customer that indicates the identity of the customer.

Mich. Comp. Laws Ann. § 445.1712. The following section of the act states exceptions to the general provision above, permitting disclosure under circumstances including "the exclusive purpose of marketing goods and services directly to the consumer." Mich. Comp. Laws Ann. § 445.1713. The act then provides that "[a] person who violates this act is guilty of a misdemeanor, § 445.1714, and then contemplates a civil cause of action "for damages to the customer identified in the record ... disclosed in violation of the act," and provides for the recovery of actual damages, including damages for emotional distress, or $5,000, whichever is greater. Mich. Comp. Laws Ann. § 445.1714.

Defendants' first argument asserts that plaintiffs have neither statutory standing nor Article III standing to bring suit under the VRPA. Defendants also argue for dismissal for failure to state a claim under the statute, citing legislative history of § 1715 in support of their argument that neither the VRPA nor its legislative record make "any

-5-

reference to magazines," but address only retail rentals. (Motion to Dismiss at 4.) Defendants reference the federal Video Privacy Protection Act, pointing out that it clearly does not address magazine subscription information, which plaintiffs do not dispute. However, defendants contend, even if the Michigan act were found to address magazines, because plaintiffs have not pleaded any "damages" under the act, they do not have standing to bring suit under it. Alternatively, defendants assert that plaintiffs' claims are not encompassed by the VRPA, for a variety of reasons. Finally, defendants assert that plaintiffs have failed to state claims for breach of contract and/or unjust enrichment. These arguments will be addressed in turn.

 (a) <u>Standing</u>

Defendants take the position that "the Court may rule first on whether [plaintiffs have] statutory standing under the Act without having to reach the Article III issue," citing Justice Stevens' concurrence in <u>Steel Co. v. Citizens for a Better Env't</u>, 523 U.S. 83, 97 n. 2 (1988) and 115. However, a reading of the <u>Steel Co.</u> opinion confirms that the plaintiffs' Article III standing, without which the court lacks subject matter jurisdiction, must be addressed first.

Article III standing "requires a plaintiff to show an 'injury in fact,' namely an 'actual or imminent' invasion of a 'concrete and particularized' legally protected interest." <u>Doe v. Boland</u>, 698 F.3d 877, 882 (6th Cir. 2012) (quoting <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560 (1992)).

Defendants contend that the three plaintiffs here lack Article III standing because they have alleged no concrete and particularized injury. Defendants quote the Supreme Court case of <u>Raines v. Byrd</u>, 521 U.S. 811, 820 n. 3 (1997): "[i]t is settled that

Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." On the other hand, the case of Warth v. Seldin, 422 U.S. 490 (1975), is often quoted for the proposition that "[t]he injury required by Article III can exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." Id. at 500. Defendants contend that plaintiffs, who have alleged only technical violations of Michigan's VRPA, clearly lack standing to bring these actions in federal court, while plaintiffs take the position that an allegation of violations of their Michigan statutory rights is sufficient to confer Article III standing.

In the case of Doe v. Chao, 540 U.S. 614, 621 (2004), cited by defendants, the Supreme Court was faced with claims under the federal Privacy Act, which allows for "actual damages sustained by the individual as a result of the refusal or failure [of a federal agency to comply with the Privacy Act], but in no case shall a person be entitled to recovery receive less than a sum of $1,000." 5 U.S.C. § 522a(g)(4)(A). The holding in that case was that under the language of the statute, a plaintiff had to prove actual damages to demonstrate entitlement to a recovery. Thus the Doe case does not assist the court in coming to a determination on the instant matter.

The court finds the case of In re Carter, 553 F.3d 979 (6th Cir. 2009), cited by plaintiffs, to be of some assistance here. In re Carter is a case in which plaintiffs claimed violations of the federal Real Estate Settlement Procedures Act. Plaintiffs alleged in that case that they received loans on real estate which involved referrals to settlement services (e.g. title work, appraisals, inspections, and the like) which generated illegal kickbacks in violation of the statute. Although it appears the plaintiffs

did not allege any *overcharge* for settlement services in that case, the plaintiffs were entitled to statutory damages in the amount of three times the amount of any charge paid for services involving illegal kickbacks. The Sixth Circuit thus found that the plaintiffs had Article III standing, for the reason that "they themselves were given referrals sullied by kickbacks in violation of RESPA," which is the individualized injury the statute was aimed at preventing. Id. at 989.

Plaintiffs initially made the argument that their "injury" included the dilution of the value of their personal information, as well as overpayment for subscriptions to magazines. However, at oral argument, it was unclear to the court whether plaintiffs could articulate any injury other than a violation of the statute. This appears to the court to be somewhat different from the Carter case, where the plaintiffs alleged the use of services tainted by prohibited practices which would arguably have a direct economic impact on real estate transactions.

In Deacon v. Pandora Media, Inc., 901 F.Supp.2d 1166 (N.D. Cal., 2012), a district court in the Northern District of California had occasion to determine the plaintiff's Article III standing in connection with a claim brought under Michigan's VRPA. Relying on Edwards v. First American Corp., 610 F.3d 514, 517 (9th Cir. 2010)[5], that court found that the plaintiff had standing for his claims that Pandora disclosed his name and "listening history" to the general public. Deacon, 901 F.Supp. at 1172. Concerning the issue of the plaintiff's injury, the district court noted that the VRPA did not require an

---

[5]This case was before the Supreme Court, with the question presented of whether a plaintiff alleging a claim under the RESPA was required to show an actual injury. However, the Supreme Court dismissed the certiorari petition as improvidently granted in a per curiam opinion on June 28, 2012.

"actual injury." It then found that in the context of such a statute, just the alleged improper disclosure "is sufficient to constitute an injury for purposes of Article III standing." Id. In coming to this determination, the Deacon court quoted from Warth:

> Essentially, the standing question in such cases is whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief.

Warth, 422 U.S. at 500.

The court also notes similarities between this case and the Northern District of Illinois case, Sterk v. Best Buy Stores, L.P., 2012 WL 5197901 (N.D. Ill.), a case with a result diametrically opposed to that of Deacon. In Sterk, the plaintiff alleged that the defendants' disclosure and retention of his "personally identifiable information" occurred in violation of the federal VPPA. The district court found that the applicable statutory language required that a plaintiff be "'aggrieved,' meaning the individual has suffered an Article III injury-in-fact." Sterk at *5 (citing 18 U.S.C. § 2710(c)(1)). Although plaintiff argued that a statutory violation alone–with no actual injury--would meet the Article III requirement, the district court disagreed, stating that

> while Congress is permitted to expand standing to the extent permitted under Article III, Congress cannot abrogate the basic standing requirement that an individual suffer an actual redressable injury-in-fact.

Id. (citing Gladstone Realtors v. Village of Bell-wood, 441 U.S. 91, 100 (1979)).

Unlike the VPPA, a close reading of the VRPA reveals that it contains absolutely no language to require that a claimant suffer any actual injury apart from a violation of the statute, and plaintiffs have not alleged any specific injury apart from the statutory violation. The court has some hesitation in finding that these allegations meet the

-9-

definition of an injury in fact, which the Supreme Court has described as "an invasion of a legally protected interest which is ... concrete and particularized," and an "irreducible constitutional minimum of standing." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).

Notwithstanding the court's reluctance here, the court ultimately cannot sufficiently distinguish this case from that of Beaudry v. TeleCheck Servs., Inc., 579 F.3d 702 (6th Cir. 2009), a case where the Sixth Circuit determined that the Fair Credit Reporting Act included "actual damages" as a form of relief in the *alternative* to statutory damages, and thus found the statute did not require a showing of actual damages. Id. at 705-06. In that case, the Sixth Circuit reasoned that:

> No Article III (or prudential) standing problem arises, it bears adding, if Beaudry is permitted to file this claim. Congress "has the power to create new legal rights, [including] right[s] of action whose only injury-in-fact involves the violation of that statutory right," In re Carter, 553 F.3d 979, 988 (6th Cir. 2009), and the two constitutional limitations on that power do not apply here. First, Beaudry must be "among the injured," in the sense that she alleges the defendants violated her statutory rights. Id.; see Sierra Club v. Morton, 405 U.S. 727, 734-35 (1972) (string citation omitted). Yet that limit poses no obstacle here: Beaudry alleged that she was one of the consumers about whom the defendants were generating credit reports based on inaccurate information due to their failure to update their databases to accommodate the new Tennessee driver's license numbering system. She thus has alleged that the defendants' failure to follow "reasonable procedures to assure maximum possible accuracy" of credit reporting information occurred "with respect to" her, as the statute requires. 15 U.S.C. §§ 1681e(b), 1681n(a). Second, although a right created by Congress "need not be economic in nature, it still must cause individual, rather than collective, harm." Carter, 553 F.3d at 989. The Act's statutory damages claim clears this hurdle as well: It does not "authorize suits by members of the public at large," id.; it creates an individual right not to have unlawful practices occur "with respect to" one's own credit information, 15 U.S.C. § 1681n. This nexus between the individual plaintiff and the legal violation thus suffices to sustain this statutorily created right. See Havens Realty Corp. v. Coleman, 455 U.S. 363, 373 (1982) (string citation omitted) (sustaining the right of Fair

> Housing Act market testers to receive "truthful information concerning the availability of housing" from sellers, even in the absence of any further harm).

The court, in attempting to reconcile the case of Beaudry with that of Raines (where the Supreme Court stated that Article III requirements could not be "erased" by the statutory creation of an injury), notes that the issue in Raines was altogether different than that in this case. There, six members of the U.S. Congress whose votes on a particular law were in the minority, sought to invalidate a federal law as unconstitutional. Plaintiffs in Raines were found to lack Article III standing for the reason that they had alleged only a "wholly abstract and widely dispersed" institutional injury, and no individual injury. Raines, 521 U.S. at 829.

This case falls in line with Beaudry, but not with Raines. Here, a statute was created by a state legislature to protect individual consumers from certain disclosures of their personal information. The court finds that plaintiffs, as those in the Beaudry case, have satisfied Article III standing requirements.

Concerning the issue of statutory standing, defendants contend that the VRPA "does not allow a cause of action based on a mere statutory violation." (Doc. # 29 at 6.) Defendants concede that the Michigan courts have not made this determination, but cite to a federal case from the Western District of Michigan, Vinton v. CG's Prep Kitchen and Café, 2010 WL 748221 at *1, to support this assertion. The Vinton plaintiff's claim was brought under the Michigan Consumer Protection Act ("MCPA"), asserting a violation based on the defendant's issuance of a credit card receipt containing the entirety of his credit card number. Because the court found the MCPA did not confer standing to a person alleging only a technical violation of the statute, but required the demonstration

-11-

of "a loss as a result of a violation of this Act," it found no claim had been stated under the MCPA.

As plaintiffs argue, unlike the MCPA, which limits recovery to individuals suffering "a loss as a result of violation of this Act," Mich. Comp. Laws Ann. § 445.911(2), there is no such requirement in the VRPA. In fact, the VRPA explicitly provides for statutory damages of $5,000 as an alternative to actual damages. The court questions how liability under the statute could possibly be construed to require a showing of actual damages when the state legislature has explicitly allowed for statutory damages.

In contrast, defendants contend that the language of the VRPA itself supports their position. Defendants quote from the section of the statute that states "a person who violates this act shall be liable in a civil action for *damages to the customer* identified in a record or other information that is disclosed in violation of this act." Mich. Comp. Laws Ann. § 445.1715. Defendants highlight the four words "damages to the customer" and assert that where a customer has shown no damages he or she can have no viable claim under the statute. However, the court notes that the four words "damages to the customer" have been taken out of the context of the rest of that sentence by defendants. In fact, the word damages is part of the phrase "for damages," and the word customer is a part of the phrase "to the customer (identified in a record or other information...)." The court reads these words simply as meaning that the entity violating the statute will face liability for damages, payable to individuals improperly identified as prohibited by the act. Moreover, this reading is in harmony with the fact that the legislature included a statutory damages provision, discussed above. Dismissal of the VRPA claims will not be granted for a lack of statutory standing.

(b)     Failure to state a claim under the VRPA

Defendants assert that both the language of the statute as well as its legislative history demonstrate that it does not apply to plaintiffs' claims. First, defendants contend that the act does not cover the sale of magazines by magazine publishers. Defendants' first argument here focuses on the language of the act which proscribes certain activities by persons (or their employees or agents) "engaged in the business of selling at *retail*, renting, or lending books or other *written materials*, sound recordings, or video records...." (emphasis added). Mich. Comp. Laws Ann. § 445.1712. Defendants assert that they are not in the "retail" business as that word is intended in the act. Next, defendants point to the words "written materials," stating they don't cover magazine subscriptions, arguing that "[i]t is self-evident that disclosure of someone's subscription to a magazine or newspaper–containing a variety of articles–is entirely different from disclosure that someone rented or purchased a particular video (or book) and is not the activity covered by the Act." (Bauer Brf. at 13.)

Defendants point out that the analogous federal act, the VPPA, does not include magazines. They then point to some limited legislative history for the proposition that the Michigan legislature intended the act to protect information concerning the "rentals of books, videos, and sound recordings," *not magazines*. However, plaintiffs have an contrary argument that is just as persuasive: that the Michigan statute included the words "other written materials," whereas the federal act did not. While the court has some question of whether the words "selling at retail" apply to these defendants, the words "written materials" are less ambiguous, and the court finds it to be a term describing magazines. As to "selling at retail," the court is persuaded by plaintiffs'

argument that the defendants to these actions are in the business of publishing magazines, and sell them to the ultimate consumer of the products.  Defendants do not dispute this description.  This appears to satisfy the "selling at retail" requirement of the statute.  The court finds the statute by its terms appears to apply to these circumstances and has no need to apply the "rule of lenity" or any other canon of statutory construction.  For these reasons, the court cannot find at this juncture that plaintiffs have failed to state a claim under the statute.

The defendants next contend that a determination by the court that the act covers magazines will raise "difficult First Amendment issues."  Defendants cite to Sorrell v. IMS Health, Inc., 131 S.Ct. 2653 (2011), where the Supreme Court found a Vermont statute prohibiting the disclosure and use of certain pharmacy records to be unconstitutional.  However, the court finds dismissal under Sorrell to be inappropriate based on the significant distinctions between the two cases.

Defendants' final argument for dismissal of the plaintiffs' claims under the VRPA is that the plaintiffs have failed to allege they did not give permission under Mich. Comp. Laws Ann. § 445.1713.  That provision states that "[a] record or information described in section 2 may be disclosed only in 1 or more of the following circumstances...."  That sentence is followed by five scenarios.  It appears that the two with any potential application in this case are (a), which states "[w]ith the written permission of the customer," and (d), which states that "[i]f the disclosure is for the exclusive purpose of marketing goods and services directly to the consumer.  The person disclosing the information shall inform the customer by written notice that the customer may remove

his or her name at any time by written notice to the person disclosing the information." Mich. Comp. Laws Ann. §§ 445.1713(a) & (d).

Defendants point to website language and language in some of the publications themselves informing subscribers about the publishers' use of their personal information. For example, in Fox, defendants point to language in *Time* magazine revealing the publisher's practices concerning placement of subscribers' personal information in a "mailing list," and inviting subscribers to "please call or write us" if they would like to be removed. A similar argument is made in Grenke concerning both defendant Hearst, Inc.'s *Country Living* magazine and website. Although such notices certainly appear to comply with the terms of the statute, plaintiffs point out that defendants only point to notices from specific points in time (rather than throughout the alleged illegal disclosures) and also argue that the publishers' disclosures are not made for the exclusive purpose of marketing goods and services directly to their *consumers*, as required by the statute. In Halaburda, defendants also point to website language giving notice of disclosure of subscribers' information, and make the creative argument that a failure to plead that the plaintiffs *did not* subscribe through the websites means that plaintiffs consented to the use of the information.

Ultimately, while defendants make some compelling arguments, the court finds them to be premature. Defendants here are making arguments concerning their compliance with Mich. Comp. Laws Ann. §§ 445.1713(a) & (d) which appear to be better suited for a summary judgment motion. As plaintiffs argue, they have alleged the unlawful disclosure of personal reading information without notice or consent. The court finds nothing more required at this juncture, although it anticipates that defendants'

arguments may well meet with some degree of success at a later stage in the proceedings.

    (c)    <u>Breach of contract/unjust enrichment</u>

Defendants also argue for dismissal of the plaintiffs' breach of contract claims for failure to state a claim. As defendants contend, plaintiffs have not identified any contract that was breached. Plaintiffs respond merely by stating that the unspecified contract "incorporated the applicable laws at the time and place of creation, including the VRPA," and that therefore the breach of the VRPA breached the contract. The court finds this argument to be nonsensical. Plaintiffs have an independent claim for violations of the VRPA. Without the identification of a contract allegedly breached by defendants, this count in each of the complaints is subject to dismissal for failure to state a claim.

The unjust enrichment claims in the <u>Grenke</u> and <u>Fox</u> cases, however, fare better. Defendants point to the Michigan Court of Appeals case of <u>Allor v. DeClark, Inc.</u>, 2012 WL 555779 (Mich. App. Feb. 21, 2012) for the proposition that associated damages are measured by the "value of the benefit received by the defendant." <u>Id.</u> at *2. Although defendants point to language from <u>In re Doubleclick Inc. Privacy Litig.</u>, 154 F.Supp. 2d 497, 525 (S.D. N.Y. 2001), where the court noted it was not aware of any other court to hold that "the value of this collected information constitutes damage to consumers or unjust enrichment to collectors," this stray remark from a district court case does not support their contention. The <u>Grenke</u> and <u>Fox</u> plaintiffs have pleaded that defendants engaged in collection and illegal disclosure of their personal reading information, and that the monetary and other benefits associated with such disclosure represents unjust

enrichment of defendants. This cause of action will not be dismissed for failure to state a claim.

For the reasons given above, defendants' motions to dismiss are **GRANTED IN PART AND DENIED IN PART**. The plaintiffs' breach of contract claims are hereby dismissed, but the plaintiffs' remaining claims survive these motions.

The court notes that motions to certify class are pending in the Grenke (# 12-14221, Doc. # 2) and Fox (# 12-14390, Doc. # 2) cases, but that a similar motion was withdrawn and is no longer pending in the Halaburda case. A hearing on the pending motions shall be held on **August 21, 2013 at 10:00 a.m**. Should plaintiff wish to re-file the motion in the Halaburda case prior to oral argument but feels the time is insufficient, the court invites plaintiff's counsel to confer with opposing counsel in all three cases and contact the court to schedule a brief adjournment of the hearing.

**IT IS SO ORDERED**.

Dated: August 5, 2013

                                         s/George Caram Steeh
                                         GEORGE CARAM STEEH
                                         UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on August 5, 2013, by electronic and/or ordinary mail.

s/Barbara Radke
Deputy Clerk

---