UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


**DAVID GRENKE, individually,**
**and on behalf of all others**
**similarly situated,**

    Plaintiff,

             **HONORABLE GEORGE CARAM STEEH**

  v.

             **No. 12-14221**

**HEARST COMMUNICATIONS, INC., a**
**Delaware Corporation,**

    Defendant.
_____/

**MOTION HEARING**

**Monday, December 8, 2014**

- - -

APPEARANCES:

For the Plaintiff:    ARI J. SCHARG, ESQ.


For the Defendant:   JONATHAN R. DONNELLAN, ESQ.

- - -


*To Obtain Certified Transcript, Contact:*
*Ronald A. DiBartolomeo, Official Court Reporter*
*Theodore Levin United States Courthouse*
*231 West Lafayette Boulevard, Room 238*
*Detroit, Michigan  48226*
*(313) 962-1234*

*Proceedings recorded by mechanical stenography.*
*Transcript produced by computer-aided transcription.*

1                                   **I  N  D  E  X**

2                                                                            <ins>Page</ins>

3   Motion hearing                                            4

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                          **E   X   H   B   I   T   S**

2    Identification _____Offered    Received

3

4                              N       O       N       E

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

       *12-14221; DAVID GRENKE v. HEARST COMMUNICATIONS, INC.*

```
 1                                Detroit, Michigan
 2                                Monday, December 8, 2014
 3
 4                         -    -    -
 5              THE CLERK:  Case Number 12-14221, David
 6    Grenke versus Hearst Communications.
 7              THE COURT:  Good morning.
 8              MR. DONNELLAN:  Good morning.
 9              MR. SCHARG:  Good morning.
10              THE COURT:  Would you like to state your
11    appearances?
12              MR. SCHARG:  Ari Scharg on behalf of the
13    plaintiff.
14              THE COURT:  Okay.
15              MR. SUMMERFIELD:  Brian Summerfield on behalf
16    of the plaintiff.
17              THE COURT:  Okay.  Welcome.
18              MR. DONNELLAN:  Jonathan Donnellan on behalf
19    of the defendant.
20              MS. FINDIKYAN:  Kristina Findikyan on behalf
21    of the defendant.
22              MR. YUHAN:  Stephen Yuhen, also on behalf of
23    the defendant.
24              MR. MOORE:  Brian Moore from Dykema on behalf
25    of the defendant.
```

*12-14221; DAVID GRENKE v. HEARST COMMUNICATIONS, INC.*

5

1              **THE COURT:**  Okay.  Welcome.  You can all take

2       a seat.  We'll hear first from the defendants since this

3       is your motion.

4              **MR. DONNELLAN:**  Good morning, your Honor.

5              We're here today on Hearst's motion to stay

6       discovery pending hearing and decision on its motion to

7       dismiss for lack of subject matter jurisdiction, and that

8       motion, the motion to dismiss, is based on plaintiff's

9       lack of standing to bring a claim under the Michigan VRPA.

10             The law in this area is quite clear.  The burden

11      to establish subject matter jurisdiction is entirely on

12      plaintiff.  That's the plaintiff's burden and plaintiff's

13      burdens alone.  From the very outset it goes back to the

14      duty to investigate before the complaint is filed, and

15      when there is a factual challenge to jurisdiction,

16      plaintiff cannot rest on the pleadings, nor is he entitled

17      to jurisdictional discovery unless he can first

18      demonstrate through probative evidence that there is a

19      factual basis for his claim of jurisdiction, and only then

20      would jurisdictional discovery be warranted if there was

21      some sort of a dispute between the two versions of facts

22      that were provided.

23             Now the fundamental premise of this suit and the

24      plaintiff's alleged injury giving him standing

25      consistently from the start has been Mr. Grenke's alleged

                 *12-14221; DAVID GRENKE v. HEARST COMMUNICATIONS, INC.*

1    subscription to Country Living Magazine, and Hearst's

2    alleged disclosure of his personal reading information,

3    specifically his name, address and the title of the

4    magazine.  That was the basis for the complaint where it's

5    spelled out clearly that he was a Country Living

6    subscriber.  It was filed back in September of 2012, and

7    the complaint contains more than 50 references to

8    subscriber and subscription information.  That was the

9    basis for plaintiff's argument in opposition to Hearst's

10   motion to dismiss the complaint under 12(b)(6) for lack of

11   standing, and that was the basis for this Court's ruling

12   on that motion accepting the allegations to be true, and

13   finding them to be sufficient at that stage of lawsuit.

14         That was also the basis for plaintiff's discovery

15   requests of the defendants, seeking documents and

16   information about his subscriptions, and the contention he

17   made in this initial disclosures where he stated that he

18   possessed details about the subscriptions and subscription

19   documents, specifically credit cards and bank statements,

20   which contained charges associated with his subscriptions

21   to Country Living and Good Housekeeping magazines.

22         We now know that that fundamental premise for the

23   lawsuit is false.  The documents don't exist.  Plaintiff's

24   counsel admitted that during the teleconference, which was

25   a meet and confer before we filed the instant motions, and

              12-14221; DAVID GRENKE v. HEARST COMMUNICATIONS, INC.

1    they were not produced in response to our document

2    requests, nor were they submitted in response to the

3    present motion.

4         What plaintiff's discovery responses did confirm

5    however, is that he was never a Country Living subscriber.

6    All his claims and allegations and arguments over the

7    years that he was a Country Living subscriber have been

8    false.  Having abandon his claim to be a Country Living

9    subscriber, there is no probative evidence demonstrating

10   that he has standing.  The only evidence that he has put

11   forward now where he claims to be evidence -- and we take

12   issue with that -- is that he was a purchaser for somebody

13   else in 2003.  That doesn't meet his burden, but be that

14   as it may, if that is his argument, that's fine.  If

15   that's his evidence, that's fine.  We will respond on the

16   motion to dismiss, and I think that we will be able to

17   satisfy the Court that that does not create standing here,

18   but for purposes of this motion, it's certainly raises no

19   factual dispute with respect to the question of

20   jurisdiction that would necessitate discovery on that

21   issue.

22        Plaintiff is not entitled specifically to

23   discovery about matters that are not alleged in the

24   complaint, particularly about person who are not parties.

25        Mr. Scharg, during our meet and confer, was very

          *12-14221; DAVID GRENKE v. HEARST COMMUNICATIONS, INC.*

1    interested in probing whether or not nonparty Rose Grenke,

2    the plaintiff's wife, might be a subscriber, and seeking

3    out information about that, and seeking information about

4    other possible basis for other claims or for other parties

5    that might be substituted in into the suit or brought into

6    the suit.  That's entirely inappropriate under Rule 26,

7    and under this circuit's very clear law that you may not

8    take discovery in aid of bringing on new claims, and

9    surviving a motion where you're allegations are clearly

10   sufficient, and in this case they have essentially been

11   conceited on a factual attack to be insufficient.

12          Now based on plaintiff's response and his position

13   to date, I expect that he'll try to shift a lot of the

14   burden and the blame that belongs entirely to his client

15   back onto Hearst, and so I would like to reserve

16   sufficient time to reply to those arguments, but at this

17   point I would simply like to end by stressing that the

18   plaintiff is the one with the burden here; that these

19   facts were completely within his possession custody or

20   control.  He had an obligation to investigate at the

21   outset, and had ample time to do so, and he has produced

22   nothing.  Discovery won't aid him now.

23          **THE COURT:**  All right.  Thank you, sir.

24          Mr. Scharg, first of all, are you abandoning the

25   claim made in the complaint that your client was a

*12-14221; DAVID GRENKE v. HEARST COMMUNICATIONS, INC.*

1   subscriber?

2               **MR. SCHARG:**  No.  It's funny that counsel

3   brings up Rule 26.

4               **THE COURT:**  Has your client been deposed?

5               **MR. SCHARG:**  No.  Before his deposition it

6   was canceled by the defendant.

7        It's funny that they bring up Rule 26 though.  On

8   August 8, 2014, they served their Rule 26(a)(1)

9   disclosures and said expressly that they have documents

10  that -- they have relevant documents to the case, and

11  those documents are plaintiff's subscription records.

12  They have plaintiff's subscription records in their

13  possession.  What happened to them, and I would like to

14  give the Court kind of a background of how we got to this

15  point.

16       Counsel for Hearst has been playing games and

17  acting in bad faith for the last four or five months.

18  After requesting multiple extensions on discovery and

19  stays, finally on May 19th, the discovery stay was lifted.

20  At that time Hearst asked for an additional two months to

21  respond to the interrogatories and request to produce.

22  That brought their new deadline to July 23rd.

23            On July 21st, pursuant to the Court's order --

24            **THE COURT:**  I'm sorry.  What was the previous

25  date?

    *12-14221; DAVID GRENKE v. HEARST COMMUNICATIONS, INC.*

1           **MR. SCHARG:**  It was moved from May 19th to

2     give an extension to July 23rd.

3           **THE COURT:**  No.  I mean, what stay order was

4     in place?

5           **MR. SCHARG:**  There was a stay that was

6     entered in place while the parties went to mediation to

7     try and resolve the claims.

8           **THE COURT:**  All right.  So that was by

9     voluntary agreement?

10          **MR. SCHARG:**  Yes.  On July 21st, pursuant to

11    the Court's order, we held a second 26(f) conference.

12    During that 26(f) conference, as we did during the first

13    26(f) conference in January of 2013, we talked about the

14    claims and defenses again.  As I understood it, Hearst's

15    primary defense was that they gave notice to the plaintiff

16    and therefore, they have an affirmative defense of notice.

17          Never once did they mention back in 2012, 2013 or

18    2014 that the plaintiff was not subscriber.  To the

19    contrary, everything that's happening to the case has

20    suggested that he is a subscriber.

21          In Hearst's answer in affirmative defenses, they

22    raise an affirmative defense of notice.  It said we gave

23    him notice, and therefore, the claim fits.  They averred

24    under Rule 11 that they gave the plaintiff notice.  They

25    also averred under Rule 11 that Mr. Grenke consented to

     *12-14221; DAVID GRENKE v. HEARST COMMUNICATIONS, INC.*

1    the disclosures at issue; that they obtained his written

2    consent.  Those are affirmative representations that were

3    made.

4         Now in their papers, Hearst has gone after us a

5    little bit saying, but we also said that he -- we denied

6    the allegations that he is a subscriber, but that didn't

7    mean anything in 2014 because his subscription lapsed by

8    that point.  When the complaint was filed, that

9    subscription was true.  When it was denied in 2014, there

10   was no reason to ask a question, was he a subscriber,

11   because his subscription lapsed and they raised these

12   affirmative defenses that clearly showed you the

13   subscriber.

14        Regardless after the 26(f) conference July 23rd, I

15   received boilerplate blanket objections to every single

16   interrogatory in request to produce.  No documents,

17   nothing.  No relevant information.  At that point for the

18   first time they said, we're not going to produce until

19   there is a protective order in place.

20        So the very next day on July 24th, I sent them a

21   protective order.  I sent them multiple emails, several

22   telephone calls, all of which were ignored until

23   August 29th when they finally sent me an email saying,

24   okay.  This protective order is okay.  It was submitted to

25   the Court and entered within a day.

         *12-14221; DAVID GRENKE v. HEARST COMMUNICATIONS, INC.*

 1              So then the next question is so when are we going

 2      to get document information?  I was promised they were

 3      going to be sent the next week.  When they weren't, we

 4      held another meet and confer conference on September 11th.

 5                  THE COURT:  Okay.  I got a flavor of the

 6      history.  Do you agree that if your client was not a

 7      subscriber, and that only subscription information was

 8      sold by the defendant or conveyed to third parties, that

 9      you would lack standing, and therefore, the Court would

10      lack subject matter jurisdiction?

11                  MR. SCHARG:  No.

12                  THE COURT:  No?  So even if he was never a

13      subscriber, would still have standing?

14                  MR. SCHARG:  Well, the Michigan VRPA doesn't

15      say anything about subscribers.  It says any customer that

16      purchases the written materials has standing.

17              Now we submitted a declaration --

18                  THE COURT:  Do you have any evidence that

19      your client purchased?

20                  MR. SCHARG:  Yes.

21                  THE COURT:  What?

22                  MR. SCHARG:  We submitted a declaration

23      saying that he sent Hearst a check with his name on it

24      multiple times since 2003 when he's renewed the

25      subscription every single year.


        12-14221; DAVID GRENKE v. HEARST COMMUNICATIONS, INC.

1          Now here's the big question, whose name is the

2      subscription in?  Mr. Grenke is in his mid-70's.  He lives

3      with his wife Rose.  They've lived together for 25 years

4      in the same place.  There's no question here that one of

5      them has standing to bring the claim, and they potentially

6      have standing to bring the claim if they're both

7      subscribers or both customers.

8          I mean, I would contend that a subscriber can be a

9      customer, but a customer does not necessarily have to be a

10     subscriber.  Regardless, their information is being

11     disclosed.  They have already confirmed to at least 37

12     different companies, including Data Minors.

13          This is not the case where somebody is trying to

14     lead the Court astray, and trying to pull the wool over

15     the Court's eyes.  One of them has standing, and it's

16     absurd that if Mr. Grenke was not actually a subscriber, a

17     customer of record, they would wait two and a half years

18     to say something.  I find that hard to believe.

19          The day before the 30(b)(6) deposition, it was

20     canceled by the defendant in favor of just submitting

21     these very limited declarations to the Court, and the fact

22     that we're even talking about evidence and declarations,

23     the binders full of documents and evidence on counsel's

24     table, shows that there's an issue over the facts here,

25     and the Sixth Circuit has said very clearly that when an

           *12-14221; DAVID GRENKE v. HEARST COMMUNICATIONS, INC.*

1    attack on subject matter implicates an element of the

2    cause of action, then the district court should, quote,

3    find that jurisdiction exists, and deal with the objection

4    as a direct attack on the merits that the plaintiff claims

5    under Rule 56.

6            The reason for that is clear.  The Sixth Circuit

7    explained that the rule exists to protect the plaintiff

8    who's essentially it's facing a challenge to the validity

9    of his claim.

10           Now if the defendants were able to challenge

11   subject matter jurisdiction at any point in the case, then

12   there would never be a decision on the merits of the case.

13   It's -- this is an untimely attack, and the Sixth Circuit

14   I've cited --

15           **THE COURT:**  I'm sorry, but an attack on

16   subject matter jurisdiction is never untimely.  It could

17   be mounted well after a judgment is entered in the case.

18   That's why we have to get it straight.

19           **MR. SCHARG:**  That's true, and that's why I

20   would like take discovery on this issue.  I mean, this is

21   an instance where whether Mr. Grenke has standing under

22   the VRPA.  All that evidence is with Hearst.  They can

23   very well challenge that his information was never not

24   disclosed to any third parties.  Okay.  That's still a

25   challenge to VRPA claim, which eventually goes to his

        *12-14221; DAVID GRENKE v. HEARST COMMUNICATIONS, INC.*

1     standing to bring the claim to federal court.

2               **THE COURT:**  I got it.  Thanks.

3               **MR. SCHARG:**  Thank you very much.

4               **THE COURT:**  I'll give you a couple minutes.

5               **MR. SCHARG:**  Can I make one last point?

6               **THE COURT:**  Sure.

7               **MR. SCHARG:**  To the extent that it was Rose

8     Grenke that's in their system instead of David, she's our

9     client as well, and we will be happy to substitute her

10    into the case.

11              **THE COURT:**  Okay.  Thanks.  I got that

12    impression.  Okay.

13         So what do you know about Rose Grenke?

14              **MR. DONNELLAN:**  Well, your Honor, with all

15    due respect it's completely irrelevant because --

16              **THE COURT:**  Well, it will be very quickly

17    relevant when he asks to amend the complaint.

18              **MR. DONNELLAN:**  Well, your Honor, we cite

19    cases actually in our motion to dismiss on this point,

20    which is, if this Court lacks subject matter jurisdiction

21    because David Grenke does not have standing, the Court

22    does not have the power to substitute in another

23    plaintiff, and so that is something that I told Mr. Scharg

24    during our meet and confer before we filed this motion

25    when he specifically said that he wanted to -- he knew

          *12-14221; DAVID GRENKE v. HEARST COMMUNICATIONS, INC.*

1    this was a possibility, and he wanted to get it right, and

2    he wanted to substitute her in if possible and start

3    asking about information it.

4         This isn't the first time Mr. Scharg and his firm

5    has sued Hearst magazines under a creative theory of a

6    state law statute that's been untested, and in the

7    previous case he lost, and I'm sure it won't be the last

8    case.  I have an obligation to my client not to open up

9    ourselves to unnecessary and unwarranted discovery, which

10   in this case he has not shown that his client is entitled

11   to, and Rose Grenke as a nonparty is not entitled to

12   discovery, and his lawyer is not entitled to take pre-suit

13   discovery on behalf of that client who is not a party in

14   this case, and the Court would be powerless to make that

15   substitution unless he can satisfy you first that

16   Mr. Grenke has standing here, something that we will

17   establish that he cannot do, and something that the

18   evidence that he has put in so far does not create any

19   issue of fact with respect to the evidence that we put in.

20   That's way the motion to stay should be --

21        **THE COURT:**  Let me interrupt if I may.  I'm

22   sorry.  I have a naturalization ceremony that I am suppose

23   to get down to.

24        Assume that Mrs. Grenke is a subscriber, that

25   Mr. Grenke wrote the check for the -- back in 2003, and

     *12-14221; DAVID GRENKE v. HEARST COMMUNICATIONS, INC.*

1   currently doesn't have checking records to support, but

2   could credibly assert that he was the check writer during

3   that period, and he wrote the check for the magazine.

4   Would that confer standing?

5               **MR. DONNELLAN:**  Confer standing on whom?

6               **THE COURT:**  Mr. Grenke as a purchaser.

7               **MR. DONNELLAN:**  I don't believe it would,

8   your Honor, because you still in order to have a

9   violation, and plaintiff counsel has said this numerous

10  times, and it's part of your Honor's order in this case,

11  is that you have to have a disclosure, and the affidavit

12  of Charlie Swift establishes that unless you are the

13  subscriber or unless you are a gift donor, a formal --

14  purchasing a subscription as a gift for somebody else,

15  your name will not be in the data base that might lead to

16  disclosure.

17        The Swift declaration is unequivocal that

18  Mr. Grenke is not in there as a Country Living purchaser

19  or subscriber, and that his name was not disclosed, and

20  that is unrebutted testimony, and we'll address that again

21  in our reply in our motion to dismiss.

22        For purposes of this motion, he has raised no

23  factual issue with respect to that testimony.  That's why

24  we say, even given whatever evidence he's put in, that's

25  fine.  We'll address that.  We don't think that it suffice

        *12-14221; DAVID GRENKE v. HEARST COMMUNICATIONS, INC.*

1    us to establish standing.  It certainly doesn't create any

2    sort of dispute -- any genuine dispute as to

3    jurisdictional fact warranting discovery.

4         If I could bring up a couple of other items, your

5    Honor, counsel stood up, and he made the claim that

6    Mr. Grenke wrote checks multiple times over a number of

7    different years.  That is not what Mr. Grenke said in his

8    declaration.  He said one time, 2003.  That's specifically

9    what he testifies to.  If you look at the Declaration

10   Paragraphs 5 and 6, there's virtually no factual content

11   in that declaration, but he certainly didn't say that he

12   wrote multiple checks over multiple years.

13        With respect to the Gentek case, again, we will

14   address that in our reply on the substantive motion to

15   dismiss.  That is completely in opposite and inapplicable.

16   That case and the other cases make clear that it only

17   applies where there is federal question subject matter

18   jurisdiction dealing with the federal statute.  Otherwise

19   there is no interest in the district court continuing onto

20   bring about some sort of a definitive resolution of a

21   state law question.

22        And finally, as to the process, I think your Honor

23   got this point certainly very clearly in respect that this

24   is an issue that has to be addressed whenever it is

25   brought up, but also it's very important that there was a

         12-14221; DAVID GRENKE v. HEARST COMMUNICATIONS, INC.

1    process leading up to this motion, and that Hearst has met

2    all of its obligations under this case.  All of its

3    pleading have been entirely accurate.  He raises questions

4    about an affirmative defense in the answer.  In the answer

5    though, it specifically, unequivocally denied that

6    Mr. Grenke was the purchaser -- I'm sorry -- was the

7    subscriber.

8         With respect to the coming to the point of filing

9    this motion, that required plaintiff to clarify his own

10   discovery requests so that we could conclude that a New

11   York base purchaser from 15 years might not have been the

12   plaintiff, and so that we can satisfy ourselves that he

13   didn't have other evidence that he said in his Rule 26

14   disclosures that he had, and he still has not amended

15   those Rule 26 disclosures.

16        We have amended ours to make perfectly clear that

17   we were talking about Country Living subscription records

18   generally based on the allegations in the complaint, but

19   it wasn't until his interrogatory responses that we were

20   in the position to file this motion your Honor, and that's

21   when it was clear that he had been a Michigan resident for

22   30 years, and could respond that he was unclear.  He

23   didn't know if he was a subscriber during the meet and

24   confer before this motion was filed when his counsel said

25   that his client wasn't sure if he was a subscriber, and he

*12-14221; DAVID GRENKE v. HEARST COMMUNICATIONS, INC.*

1    was not sure if he was a purchaser.  So the declaration

2    that he puts in now is in conflict with that statement

3    that he made to us during the meet and confer call.

4         All of this, your Honor, I would submit is an

5    inappropriate basis for a granting of discovery to conduct

6    essentially a fishing expedition for what he says he wants

7    to file a claim on behalf of another party, a nonparty, or

8    to see if there is anything out there.  He has not done

9    anything to support his entitlement to that discovery, and

10   we would respectfully ask your Court to grant our motion.

11              **THE COURT:**  Okay.  Thank you.

12              **MR. DONNELLAN:**  Thank you.

13              **THE COURT:**  There are certainly significant

14   challenges made to the plaintiff's standing to maintain

15   his suit.  However, the Court finds essentially that the

16   plaintiff is entitled to test the assertion by the

17   defendant that Mr. Grenke lacks standing under

18   circumstances where he may be in a position to demonstrate

19   that his wife and he affected a joint purchase, where the

20   subscriber information basically is shared between them,

21   and is ultimately demonstrated to be disclosed to third

22   party.

23        I think basically the history of the case as

24   recited by both counsel would conclude that the Court is

25   unable to find that based upon the information adduced so

          *12-14221; DAVID GRENKE v. HEARST COMMUNICATIONS, INC.*

1    far, that Mr. Grenke has been demonstrated to lack

2    standing altogether, and that plaintiff should have the

3    opportunity to explore that limited issue.

4              So the Court is going to grant in part and deny in

5    part defendant's motion to stay discovery, allowing

6    discovery that goes directly to the question of standing,

7    and I will stay all other discovery in the case.

8              I'm going to-- I'll put out a written decision on

9    this point.

10             I just would like to observe, if I'm faced with a

11   motion to amend by adding the wife to the case, and even

12   if the defendant is entitled to a dismissal of the case,

13   in all likelihood given the nature of the claims and the

14   possible scenario as it relates to standing here, that

15   dismissal would end up being without prejudice, and the

16   amendment advanced by the defendant may well be

17   permissible under those circumstances to cure the

18   deficiency asserted by the defendant, but those are among

19   many issues that would be considered by the Court at a

20   later point.

21             Right now the Court will allow the plaintiff to

22   test the sufficiency of the claims made in this motion in

23   the motion to dismiss with discovery limited to that basic

24   question, and we'll see where it goes from there.

25             **MR. SCHARG:**  One housekeeping issue.


        *12-14221; DAVID GRENKE v. HEARST COMMUNICATIONS, INC.*

```
1              THE COURT:  Yes.

2              MR. SCHARG:  We have a discovery closure date

3    of January 9th I believe.

4              THE COURT:  Discovery closure date?

5              MR. SCHARG:  Yes.  I guess we can confer and

6    submit to the Court a revised schedule if that works for

7    the Court.

8              THE COURT:  That's fine with me.

9              MR. SCHARG:  Thank you.

10             MR. DONNELLAN:  Your Honor, if I may.

11             THE COURT:  Yes.

12             MR. DONNELLAN:  Just with respect to the

13   scope of discovery, I would ask that it be limited to

14   Country Living Magazine because that is the only magazine

15   that he was alleged to be a subscriber to in the

16   complaint, and if there are any other details that the

17   Court could provide us with in terms of the scope of

18   discovery permitted, that would be helpful in order to

19   avoid burdening the Court with any further questions about

20   it.

21        The other thing is a scheduling matter, and I

22   agree with my adversary.  I think we can work out a

23   schedule here, but we would like to put off obviously the

24   time for us to reply on the motion to dismiss because I

25   assume they are going to want put in some supplemental
```

        12-14221; DAVID GRENKE v. HEARST COMMUNICATIONS, INC.

1    response that we would reply to after the discovery is

2    provided, and the witness who I think would probably be

3    the most relevant witness here -- and I would ask that

4    discovery be limited to his deposition -- Mr. Swift, to

5    see it they can establish anything based on testing his

6    declaration.  He is going to be in Australia and will be

7    unavailable for a period of time where I think the

8    earliest that we can do that deposition would be in

9    probably mid-January.

10           **THE COURT:**  Okay.  Well, with respect to that

11   first question, why shouldn't it be limited to Country

12   Living?  That's the only thing that you've alleged, Mr.

13   Scharg.

14           **MR. SCHARG:**  In Mr. Grenke's declarations, he

15   also indicated that he had a subscription to Good

16   Housekeeping.  I suggest it be limited to those two

17   magazines.  I think that's a fair compromise.

18           With respect to the Swift declaration, we've had

19   no chance to understand who is in charge of what.  All

20   we've gotten was an untested declaration of a search of a

21   very narrow limited data base.

22           Why don't I send them a 30(b)(6) deposition

23   notice?  We can talk about the topics, and perhaps

24   Mr. Swift is the person that would testify to all of it,

25   but I'm not going to limit my discovery just to the search

         *12-14221; DAVID GRENKE v. HEARST COMMUNICATIONS, INC.*

1    of a very narrow data base within Hearst infrastructure.

2    It is conceivable that there are several data bases that

3    Mr. Grenke's information might be located in.

4              **MR. DONNELLAN:**  Your Honor, respectfully

5    Mr. Swift's declaration is pretty clear on this.  He's the

6    vice-president in charge of this entire area, and

7    testified to all of Hearst magazine records.

8              **THE COURT:**  He will be available after --

9              **MR. DONNELLAN:**  He will be available after

10   the beginning of the year.  Perhaps that would be the

11   place to start restricted to Mr. Grenke's records to

12   Country Living Magazine, and then if Mr. Scharg wants to

13   seek additional discovery, then he can do so at that

14   point, but to open ourselves up to a 30(b)(6), generally I

15   think is unproductive.  His last 30(b)(6) had 11 topics.

16   He said in his response papers that he wanted to take that

17   as a starting point and augment it with other topics.  I

18   just think that would be unproductive, and we would wind

19   up in front of the Court quickly.

20             **THE COURT:**  Sounds like  Mr. -- what his

21   name?

22             **MR. DONNELLAN:**  Mr. Swift.

23             **THE COURT:**  -- Mr. Swift has the position

24   that would enable him to offer what needs to be offered on

25   the question of standing.

     *12-14221; DAVID GRENKE v. HEARST COMMUNICATIONS, INC.*

1          **MR. SCHARG:**  I agree on that.  I just don't
2      want to be limited to his actual statements in his
3      declaration.  That's all I'm saying.
4          **THE COURT:**  Right.  Okay.  Anything that
5      relates to standing.
6          **MR. SCHARG:**  Thank you.
7          **THE COURT:**  If the complaint does not refer
8      to the second magazine, then I think you're limited to the
9      first.
10         **MR. SCHARG:**  That's fine.
11         **MR. DONNELLAN:**  I'm sorry, your Honor.  Final
12     question.  Will he be permitted to inquire as to Rose
13     Grenke?
14         **THE COURT:**  Yeah, I think so.  As I said, I
15     think one of the potential conclusions here is that they
16     function jointly to purchase and subscribe, and that would
17     also have some bearing on the Court whether the Court
18     concludes that the case should be dismissed with or
19     without prejudice.  I would say that is -- you might as
20     well find out what the facts are here that would determine
21     standing, and I'm not convinced as of yet that there isn't
22     a scenario that would allow Mr. Grenke to stay in the
23     case.
24         **MR. SCHARG:**  Thank you.
25         **MR. DONNELLAN:**  Thank you, your Honor.

       *12-14221; DAVID GRENKE v. HEARST COMMUNICATIONS, INC.*

1              **THE COURT:**  All right.

2

3                    (Proceedings concluded.)

4                          -   -   -

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

         *12-14221; DAVID GRENKE v. HEARST COMMUNICATIONS, INC.*

1               **C E R T I F I C A T I O N**

2            I, Ronald A. DiBartolomeo, official court

3     reporter for the United States District Court, Eastern

4     District of Michigan, Southern Division, appointed

5     pursuant to the provisions of Title 28, United States

6     Code, Section 753, do hereby certify that the foregoing is

7     a correct transcript of the proceedings in the

8     above-entitled cause on the date hereinbefore set forth.

9            I do further certify that the foregoing

10    transcript has been prepared by me or under my direction.

11

12    _____          _____
      Ronald A. DiBartolomeo, CSR                      Date
13    Official Court Reporter

14                              -    -    -

15

16

17

18

19

20

21

22

23

24

25

              *12-14221; DAVID GRENKE v. HEARST COMMUNICATIONS, INC.*